UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
NAACP,

99 Civ 3999 (JBW)
99 Civ 7037 (JBW)

Plaintiff,

-against-

Fifth
~~FOURTH~~ AMENDED
AND CONSOLIDATED
COMPLAINT

AMERICAN ARMS, INC.; ARCADIA
MACHINE & TOOL, INC; ARMS
TECHNOLOGY, INC.; ASTRA-STAR
C/LIBRA, S.A.; AUTAUGA ARMS, INC.;
BEEMILLER, INC.;  BERETTA HOLDING, S.p.A.;
BRAZTECH INTERNATIONAL, L.C.;
BERSA, S.A.; B.L. JENNINGS, INC.;
BROWNING ARMS COMPANY; BRYCO
ARMS; CALICO LIGHT WEAPON SYSTEMS;
CENTURY INTERNATIONAL
ARMS, INC.; CESKA ZBROJOVKA;
CHARCO 2000, INC.; CHINA NORTH
INDUSTRIES a/k/a NORINCO;
COBRAY FIREARMS, INC.; COLT'S
MANUFACTURING COMPANY, INC.;
CZ-USA; DAEWOO PRECISION
INDUSTRIES, LTD.; DAVIS INDUSTRIES;
DESERT MOUNTAIN
MANUFACTURING;  EAGLE IMPORTS, INC.;
EMCO, INC.;EUROPEAN AMERICAN
ARMORY CORP.; EXCEL INDUSTRIES
a/k/a ACCU-TEK; FABBRICA D'ARMI PIETRO
BERETTA S.p.A; FERUNION/HUNGARIAN
ARMS; FORT WORTH FIREARMS;
FREEDOM ARMS, INC.; FIREARMS
INTERNATIONAL INC.; F.M.J., INC. d/b/a FULL
METAL JACKET, INC.; GALENA INDUSTRIES;
GLOCK GmbH; GLOCK, INC.; GRENDEL, INC.;
HAMMERLI LTD. a/k/a HAMMERLI GmbH;
HASKELL COMPANY; HECKLER & KOCH,
GmbH; HECKLER & KOCH, INC.; HERITAGE
MANUFACTURING, INC.; HIGH STANDARD
MANUFACTURING, INC.; HI-POINT



1



FIREARMS; H&R 1871, INC.;
HOWA MACHINERY LTD.; IMPORT
SPORTS, INC.; INTERNATIONAL ARMAMENT
CORP. d/b/a INTERARMS; ISRAEL
MILITARY INDUSTRIES; K.B.I. INC.;
KEL-TEC CNC INDUSTRIES, INC.; LEINAD,
INC.; LLAMA GABILONDO Y CIA; LORCIN
ENGINEERING CO., INC.; L.W. SEECAMP
COMPANY, INC.; MAGNUM
RESEARCH, INC.; MITCHELL ARMS, INC.;
NAVEGAR, INC. d/b/a INTRATEC; NAVY ARMS
COMPANY; NORTH AMERICAN ARMS, INC.;
NORTH CHINA INDUSTRIES NORINCO, INC.;
PARA-ORDNANCE MANUFACTURING, INC.;
PARA-ORDNANCE, INC.; PHOENIX ARMS;
RAVEN ARMS, INC.; REPUBLIC ARMS; ROSSI, S.A.;
SGS IMPORTS INTERNATIONAL, INC.;
SIGARMS, INC.; SIGARMS/SAUER; SMITH &
WESSON CORP.; STAR, BONIFACIO ECHEVERRIA
S.A.; STURM, RUGER & COMPANY, INC.;
SUNDANCE INDUSTRIES, INC.; S.W. DANIEL, INC.;
TALON INDUSTRIES, INC.;
TANFOGLIO FRATELLI S.r.l.; TAURUS
HOLDINGS, INC.; TAURUS INTERNATIONAL
MANUFACTURING, INC.; FORJAS TAURUS, S.A.;
THOMPSON/CENTER ARMS COMPANY, INC.;
UBERTI ALDO; UBERTI (USA), INC.; ULTRA
LIGHT ARMS, INC.; WALTHER GmbH; WALTHER
USA LLC; SYLVIA DANIEL, WAYNE DANIEL,
BRUCE JENNINGS,

ACUSPORT CORPORATION, ALAMO LEATHER
GOODS, INC., ALL-SPORTS, LLC, ABN SHOOTING
SPORTS SUPPLY, INC.  d/b/a ABN SPORTS SUPPLY,
INC., BANGERS, L.P., BILL HICK'S AND COMPANY,
LTD., BONITZ BROTHERS, INC., BRAZAS SPORTING
ARMS, INC., CABELA'S INC., CAMFOUR, INC.,
CHATTANOOGA SHOOTING SUPPLIES, INC., CSI
SPORTS, LLC, DAVIDSON'S SUPPLY COMPANY,
INC., DIXIE SHOOTERS SUPLLY, INC., ELLETT
BROTHERS, INC., EUCLID AVENUE SALES CO., FABER
BROTHERS, INC., FANNING WHOLESALE, INC., FOX
WHOLESALE, INC., GLEN ZANERS FUR AND SPORTING
GOODS, CO., GO SPORTSMEN SUPPLY, INC., HENRY'S
TACKLE, LLC., HICKS, INC., HILL COUNTRY WHOLESALE,

INTERSTATE ARMS CORP., JERRY'S SPORTS CENTER,
NORTH EAST, INC., JERRY'S SPORTS, INC. D/B/A JERRY'S
SPORTS CENTER, INC., KIESLER POLICE SUPPLY, INC.,
L.M. BURNEY, INC., LEW HORTON DISTRIBUTING
COMPANY, INC., LIPSEY'S, INC., MKS SUPPLY, INC.,
McGEE'S, INC.,MOUNTAIN STATE SPORTING GOODS,
INC., NATIONAL RECREATIONAL SHOOTINGSPORTS
SUPPLY CO. d/b/a ASHLAND SHOOTING SUPPLY, INC.,
NATIONWIDE SPORTS DISTRIBUTORS, INC., OUTDOOR
SPORTS HEADQUARTERS, INC.,RILEY'S, INC.,
RON SHIRK'SSHOOTERS SUPPLIES, INC.,
RSR MANAGEMENT COMPANY, RSR GROUP, INC.,
SG DISTRIBUTING, SCOTT WHOLESALE COMPANY, INC.,
SCOTT'S, INC., SIMMON'S GUN SPECIALTIES, INC.,
SOUTHERN OHIO GUN, INC., SPORTS SOUTH, INC., SPORTS, INC.,
THE SPORTSMEN'S GUIDE, INC., VALOR CORPORATION, WALTER
CRAIG, INC., WAREHOUSE 610, WILLIAMS
SHOOTERS SUPPLY, AND WORLDWIDE SPORTS NETWORK

Defendants.

-------------------------------------------------------------x

Plaintiff National Association for the Advancement of Colored People (hereinafter

"NAACP") on behalf of itself, its individual members including but not limited to Gladys

Gerena, Kenneth McLaughlin, Janice Sweeting, MonaLisa Harris, and others whose interests it

represents, by way of Fourth Amended and Consolidated Complaint against the defendants, and

each of them, allege as follows:

I.

**NATURE OF THE ACTION**

1. Plaintiff NAACP brings this action for equitable relief against the defendants seeking

changes to the marketing, distribution and sales practices of the defendants – practices which

have led to harm to the NAACP as an organization and disproportionate numbers of injuries,

deaths and other damages among those whose interests the NAACP represents.

-3-

2.      Handguns designed, manufactured, imported, marketed, distributed and sold by the defendants kill and seriously injure tens of thousands of people in the United States every year.  Many of those who are injured, killed or placed at risk by the defendants' handguns are children, including the children of members of the NAACP, and other children whose interests and welfare the NAACP represents and endeavors to protect.

3.      These handgun-related injuries and deaths are the result of the defendants' conduct in intentionally marketing and distributing handguns in a manner in which substantial and disproportionate numbers are quickly moved into criminal hands; and by failing to regulate, supervise and otherwise exercise reasonable control over the marketing, distribution and sale of their handguns, resulting in an oversupply of illegal handguns in the United States.

4.      For years, the handgun industry has unreasonably interfered with the public health and welfare by intentionally cultivating channels of distribution that serve underground and crime gun markets, by negligently distributing handguns and by doing so has flooded and saturated the lawful handgun market so as to create, maintain and supply an unlawful, unregulated and underground handgun market.  Defendants knew, or reasonably should have known and foreseen, that they were producing, marketing and distributing handguns far in excess of the reasonable legitimate demand from responsible and legal consumers in the lawful handgun market, defendants also knew for a considerable period of time that substantial and disproportionate numbers of their guns were going into criminal hands but they have failed and refused to take any meaningful steps to regulate and control the marketing and distribution of their handguns.  Defendants' acts and omissions, both individually and collectively as an industry, have established the conditions necessary to facilitate the supply of handguns to an unlawful underground market in handguns.  It is in this unlawful market, which is the source of

handguns involved in thousands of shootings annually, that criminals, juveniles, the mentally ill and other persons not lawfully authorized to own or possess handguns, can and do quickly and easily obtain such lethal weapons.

5.  These injuries and deaths are also the result of the defendants' design, marketing and advertising of their products to appeal to the criminal market, as well as failure to provide adequate warnings about the risks and dangers associated with their handguns.  Instead of warning about the risks and dangers of handgun ownership, possession and use, the defendants have concealed and down-played these risks and dangers, especially to children and others persons inexperienced in the use of handguns.  Defendants further over promote the purported benefits of handgun ownership. They advertise, portray and emphasize handgun ownership as providing safety and security, even though handgun ownership actually increases dramatically the risks of injury and death to household members.

6.  Defendants are and have been aware of the enormous scale of human suffering caused by their handguns, but for decades have shirked any responsibility for the tragedies caused by their products, instead shifting the blame to the users of their deadly products.  Their lack of care and concern for the suffering caused to victims by their negligent marketing and distribution practices, their defectively and negligently designed, marketed, and distributed handguns, and their failure to warn of the true risks and dangers of handgun ownership, possession and use is the result of callous disregard, gross indifference to the right and safety of others, greed, and a complete absence of civic responsibility. The handgun industry has historically denied that it bears any responsibility for the misuse of its product by either youths or criminals, and it has resisted any efforts made to institute safer sales or marketing practices, or to incorporate available safety features in the design of its products to prevent accidental

discharges. On the contrary, the handgun industry uses the lobbying efforts of the National Rifle Association and other organizations of which the defendants are members to oppose and defeat any proposed legislative changes in industry practices which would make handguns less accessible to criminals, juveniles and other prohibited persons.

7.   As a consequence of the defendants' conduct, plaintiff NAACP, its members, and persons whose interests it seeks to protect, have suffered, and will continue to suffer, disproportionate irreparable harm, in the nature of serious personal injuries, deaths and other damages, unless the defendants are prevented from engaging in their harmful activities. There being no adequate remedy at law, plaintiffs invoke the Court's historical equitable authority to grant the injunctive relief requested herein.

## II.

### JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship, the amount in controversy being in excess of $75,000.

9.  Venue of this matter in the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391 in that all defendants conduct business and advertise in this district, have caused their products to be distributed in this district and have received substantial profits from the sale of their products in this district.

## III.
### THE PARTIES
#### Plaintiffs

10.     Plaintiff NAACP is a citizen of the States of New York and Maryland, being organized and existing under the laws of New York, with its principal place of business in Maryland. It is a national organization with more than 500,000 members and more than 2,200

local branches covering all 50 states and the District of Columbia, as well as locations overseas. Founded in 1909 and incorporated in 1911, it is the oldest and largest civil rights organization in the United States. Its purposes include the promotion of social justice and protection of the well-being and security of African-Americans and other persons of color. The NAACP is committed to non-violence and the achievement of its goals by moral, political and legal persuasion through the press, the political process, and the legal system. The NAACP is particularly concerned about the level of handgun violence in African-American communities and it has consistently taken a strong position against such violence by advocating strict handgun regulation and handgun violence prevention. Plaintiff NAACP brings this action for permanent injunctive relief in order to protect the well-being and security of its membership which has been disproportionately injured by defendants' conduct, and those other persons whose interests it represents, and are threatened with the disproportionate risk of future harm, and such action is germane to its purposes.

11.    A significant number of NAACP members, including but not limited to Gladys Gerena, Kenneth McLaughlin, Janice Sweeting, MonaLisa Harris, could have brought this action in their own right in that a number of NAACP members have been injured by negligently marketed underground market firearms and a greater number have been placed at risk of harm as a result of the prevalence of underground market handguns.

12.    In addition to suing in its representational capacity, plaintiff NAACP has suffered injury to itself as an organization and is at risk of suffering further injury as a result of the prevalence of underground market handguns and thus also brings this action on its own behalf.

13.    The claims for injunctive relief asserted by plaintiff NAACP can be presented by the plaintiff organization as well as the participation of individual members.

14.    Some of the individual members who could have brought the action in their own right include, Gladys Gerena, a citizen of the State of New York and a resident of the County of Kings. She was the mother and natural guardian of Shaun Johnson, a citizen of the State of New York and a resident of the County of Kings who was killed by a handgun that has not been recovered or otherwise identified on September 1, 1995. Gladys Gerena is the duly appointed representative of Shaun Johnson.

15.    Another individual member is Kenneth McLaughlin, a citizen of the State of New York and a resident of the County of New York. He was shot with a handgun that has not been recovered or otherwise identified on June 30, 1996.

16.    Another member is MonaLisa Harris, a citizen of the State of New York and a resident of the County of Bronx. She was the mother of Sha'rron Robert Harris a resident of the Bronx and the State of NewYork who was killed by a handgun that has not been recovered or otherwise identified on August 10, 1996. MonaLisa Harris is the duly appointed representative of her shon Sha'rron Robert Harris.

17.    Another member is Janice Sweeting, a citizen of the State of New York and a resident of the County of Kings. She was the mother of Kyle Niger Sweeting who was killed by a handgun that has not been recovered or otherwise identified on March 15, 1997. Janice Sweeting is the duly appointed representative of her son Kyle Niger Sweeting.

## Defendant Manufacturers

18.    At all times relevant to this action, defendant AMERICAN ARMS, INC. ("American Arms") was and still is a corporation organized and existing under the laws of the State of Kansas with its principal place of business in Missouri. At all times relevant to this action, American Arms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold

within the United States, including the State of New York.

19.     At all times relevant to this action, defendant ARCADIA MACHINE & TOOL,

INC. ("Arcadia") was and still is a corporation organized and existing under the laws of the

State of California with its principal place of business in California.  At all times relevant to this

action, Arcadia manufactured, assembled and/or imported handguns, which were marketed,

distributed and/or sold within the United States, including the State of New York.

20.     At all times relevant to this action, defendant ARMS TECHNOLOGY, INC.

("Arms Technology") was and still is a corporation organized and existing under the laws of the

State of Utah with its principal place of business in Utah. At all times relevant to this action,

Arms Technology manufactured, assembled and/or imported handguns, which were marketed,

distributed and/or sold in the United States, including the State of New York.

21.     At all times relevant to this action, defendant ASTRA-STAR, C/LBARRA S.A.

("Astra-Star") was and still is a corporation organized and existing under the laws of Spain with

its principal place of business in Spain.  At all times relevant to this action, Astra-Star

manufactured, assembled and/or imported handguns, which were marketed, distributed and/or

sold within the United States, including the State of New York.

22.     At all times relevant to this action, defendant AUTAUGA ARMS, INC.

("Autauga Arms") was and still is a corporation organized and existing under the laws of the

State of Alabama with its principal place of business in Alabama. At all times relevant to this

action, Augusta Arms manufactured, assembled and/or imported handguns, which were

marketed, distributed and/or sold in the United States, including the State of New York.

23.     At all times relevant to this action, defendant BEEMILLER, INC. ("Beemiller")

was and still is a corporation organized and existing under the laws of the State of Ohio with its

principal place of business in Ohio. At all times relevant to this action, Beemiller manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold in the United States, including the State of New York.

24.   At all times relevant to this action, defendant BRAZTECH INTERNATIONAL, L.C. ("BrazTech") was and still is a corporation organized and existing under the laws of Florida, with its principal place of business in Florida. At all times relevant to this action, BrazTech imported and distributed handguns within the United States, including the State of New York..

25.   At all times relevant to this action, defendant BERSA S.A. ("Bersa") was and still is a corporation organized and existing under the laws of Argentina with its principal place of business in Argentina.  At all times relevant to this action, Bersa manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

26.   At all times relevant to this action, defendant B.L. JENNINGS, INC. ("B.L. Jennings") was and still is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Nevada.  At all times relevant to this action, B.L. Jennings, Inc. manufactured, assembled and directed the manufacture, assemblage and distribution of handguns for defendant, Bryco Arms, and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

27.   At all times relevant to this action, defendant BROWNING ARMS COMPANY ("Browning") was and still is a corporation organized and existing under the laws of the State of Utah with its principal place of business in Utah.  At all times relevant to this action, Browning manufactured, assembled and/or imported handguns, which were marketed, distributed and/or

sold within the United States, including the State of New York.

28.    At all times relevant to this action, defendant BRYCO ARMS ("Bryco") was and still is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Nevada. At all times relevant to this action, Bryco manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

29.    At all times relevant to this action, defendant CALICO LIGHT WEAPON SYSTEMS ("Calico") was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in Nevada. At all times relevant to this action, Calico manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

30.    At all times relevant to this action, defendant CENTURY INTERNATIONAL ARMS, INC. ("Century") was and still is a corporation organized and existing under the laws of the State of Vermont with its principal place of business in Vermont. At all times relevant to this action, Century manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

31.    At all times relevant to this action, defendant CESKA ZBROJOVKA ("Ceska") was and still is a corporation organized and existing under the laws of Argentina with its principal place of business in Argentina. At all times relevant to this action, Ceska manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

32.    At all times relevant to this action, defendant CHARCO 2000, INC. ("Charco") was and still is a corporation organized and existing under the laws of Connecticut with its

principal place of business in Connecticut.  At all times relevant to this action, Charco manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

33.    At all times relevant to this action, defendant CHINA NORTH INDUSTRIES ("China North") a/k/a NORINCO was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all times relevant to this action, China North manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

34.    At all times relevant to this action, defendant COBRAY FIREARMS, INC. ("Cobray") was and still is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Georgia.  At all times relevant to this action, Cobray manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

35.    At all times relevant to this action, defendant COLT'S MANUFACTURING COMPANY, INC. ("Colt's") was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Connecticut.  At all times relevant to this action, Colt's manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

36.    At all times relevant to this action, defendant CZ-USA was and still is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Kansas.  At all times relevant to this action, CZ-USA manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the

United States, including the State of New York.

37.    At all times relevant to this action, defendant DAEWOO PRECISION

INDUSTRIES, LTD. ("Daewoo") was and still is a corporation organized and existing under the

laws of Korea of with its principal place of business in Korea. At all times relevant to this

action, Daewoo manufactured, assembled and/or imported handguns, which were marketed,

distributed and/or sold within the United States, including the State of New York.

38.    At all times relevant to this action, defendant DESERT MOUNTAIN

MANUFACTURING ("Desert Mountain") was and still is a corporation organized and existing

under the laws of the State of Montana with its principal place of business in Montana. At all

times relevant to this action, Desert Mountain manufactured, assembled and/or imported

handguns, which were marketed, distributed and/or sold within the United States, including the

State of New York.

39.    At all times relevant to this action, defendant EAGLE IMPORTS, INC. ("Eagle

Imports") was and still is a corporation organized and existing under the laws of the State of

New Jersey with its principal place of business in New Jersey. At all times relevant to this

action, Eagle Imports manufactured, assembled and/or imported handguns, which were

marketed, distributed and/or sold within the United States, including the State of New York.

40.    At all times relevant to this action, defendant EUROPEAN AMERICAN

ARMORY CORP. ("E.A.A.") was and still is a corporation organized and existing under the

laws of the State of Florida with its principal place of business in Florida. At all times relevant

to this action, E.A.A. manufactured, assembled and/or imported handguns, which were

marketed, distributed and/or sold within the United States, including the State of New York.

41.    At all times relevant to this action, defendant EXCEL INDUSTRIES ("Excel"),

a/k/a ACCU-TEK, was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all times relevant to this action, Eagle Imports manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

42.    At all times relevant to this action, defendant FABBRICA D'ARMI PIETRO BERETTA S.p.A. ("Pietro Beretta") was and still is a corporation organized and existing under the laws of Italy with its principal place of business in Italy.  At all times relevant to this action, Pietro Beretta manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

43.    At all times relevant to this action, defendant FERUNION/HUNGARIAN ARMS ("FEG") was and still is a corporation organized and existing under the laws of Hungary with its principal place of business in Hungary.  At all times relevant to this action, FEG manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

44.    At all times relevant to this action, defendant FORT WORTH FIREARMS  ("Fort Worth Firearms") was and still is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Texas. At all times relevant to this action, Fort Worth Firearms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

45.    At all times relevant to this action, defendant FIREARMS INTERNATIONAL INC. ("Firearms International") was and still is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Texas.  At all times relevant to this action, Firearms International manufactured, assembled and/or imported handguns, which

were marketed, distributed and/or sold within the United States, including the State of New York.

46.     At all times relevant to this action, defendant F.M.J., INC. d/b/a FULL METAL JACKET, INC. ("Full Metal Jacket") was and still is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Tennessee. At all times relevant to this action, Full Metal Jacket manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

47.     At all times relevant to this action, defendant GLOCK GmbH was and still is a corporation organized and existing under the laws of Austria with its principal place of business in Austria.  At all times relevant to this action, Glock GmbH manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the state of New York.

48.     At all times relevant to this action, defendant GLOCK, INC. ("Glock") was and still is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Georgia.  At all times relevant to this action, Glock manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

49.     At all times relevant to this action, defendant GRENDEL, INC. ("Grendel") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida.  At all times relevant to this action, Grendel manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

50.     At all times relevant to this action, defendant HAMMERLI LTD ("Hammerli") a/k/a HAMMERLI GmbH was and still is a corporation organized and existing under the laws of the Switzerland with its principal place of business in Switzerland. At all times relevant to this action, Hammerli manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

51.     At all times relevant to this action, defendant HASKELL COMPANY ("Haskell") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida.  At all times relevant to this action, Haskell manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York

52.     At all times relevant to this action, defendant HECKLER & KOCH GmbH ("Heckler & Koch") was and still is a corporation organized and existing under the laws of Germany with its principal place of business in Germany.  At all times relevant to this action, Heckler & Koch manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

53.     At all relevant times to this action, defendant HECKLER & KOCH, INC. was and still is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business in Virginia. At all times relevant to this action, Heckler & Koch, Inc. imported, marketed, distributed and/or sold handguns within the United States, including the State of New York.

54.     At all times relevant to this action, defendant HERITAGE MANUFACTURING, INC. ("Heritage") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida. At all times relevant to this

action, Heritage manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

55.     At all times relevant to this action, defendant HIGH STANDARD MANUFACTURING, INC.  ("High Standard") was and still is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Texas.  At all times relevant to this action, High Standard manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

56.     On information and belief, at all times relevant to this action, defendant HI-POINT FIREARMS ("Hi-Point") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Ohio.  At all times relevant to this action, Hi-Point manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

57.     At all times relevant to this action, defendant HOWA MACHINERY LTD. ("Howa") was and still is a corporation organized and existing under the laws of Japan with its principal place of business in Japan.  At all times relevant to this action, How manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

58.     At all times relevant to this action, defendant IMPORT SPORTS, INC. ("Import Sports") was and still is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times relevant to this action, Import Sports manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

59.    At all times relevant to this action, defendant INTERNATIONAL ARMAMENT CORP. d/b/a INTERARMS ("Interarms") was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Virginia.  At all times relevant to this action, Interarms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

60.    At all times relevant to this action, defendant ISRAEL MILITARY INDUSTRIES ("IDI") was and still is a corporation organized and existing under the laws of Israel with its principal place of business in Israel.  At all times relevant to this action, IDI manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

61.    At all times relevant to this action, defendant K.B.I., INC. ("KBI") was and still is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.  At all times relevant to this action, KBI manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

62.    At all times relevant to this action, defendant KEL-TEC CNC INDUSTRIES, INC. ("Kel-Tec") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida. At all times relevant to this action, Kel-Tec manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

63.    At all times relevant to this action, defendant LLAMA GABILONDO Y CIA ("Llama") was and still is a corporation organized and existing under the laws of Spain with its

principal place of business in Spain.  At all times relevant to this action, Llama manufactured,

assembled and/or imported handguns, which were marketed, distributed and/or sold within the

United States, including the State of New York.

64.     At all times relevant to this action, defendant LORCIN ENGINEERING CO.,

INC. ("Lorcin") was and still is a corporation organized and existing under the laws of the State

of California with its principal place of business in California.  On November 17, 1996 Lorcin

filed a petition for reorganization under Chapter 11 of the Bankruptcy Code.  At all times

relevant to this action, Lorcin manufactured, assembled and/or imported handguns, which were

marketed, distributed and/or sold within the United States, including the State of New York.

65.     At all times relevant to this action, defendant L.W. SEECAMP COMPANY, INC.

("L.W. Seecamp") was and still is a corporation organized and existing under the laws of the

State of Connecticut with its principal place of business in Connecticut.  At all times relevant to

this action, L.W. Seecamp manufactured, assembled and/or imported handguns, which were

marketed, distributed and/or sold within the United States, including the State of New York.

66.     At all times relevant to this action, MAGNUM RESEARCH, INC. ("Magnum")

was and still is a corporation organized and existing under the laws of the State of Minnesota,

with its principal place of business in Minnesota. At all times relevant to this action, Magnum

imported, marketed, distributed and/or sold handguns within the United States, including the

State of New York.

67.     At all times relevant to this action, defendant MITCHELL ARMS, INC.

("Mitchell") was and still is a corporation organized and existing under the laws of the State of

California with its principal place of business in California.  At all times relevant to this action,

Mitchell manufactured, assembled and/or imported handguns, which were marketed, distributed

and/or sold within the United States, including the State of New York.

68.     At all times relevant to this action, defendant NAVEGAR, INC. d/b/a INTRATEC ("Intratec") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida.  At all times relevant to this action, Intratec manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York

69.     At all times relevant to this action, defendant NAVY ARMS COMPANY ("Navy Arms") was and still is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times relevant to this action, Navy Arms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

70.     At all times relevant to this action, defendant NORTH AMERICAN ARMS, INC. ("North American Arms") was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Delaware.  At all times relevant to this action, North American Arms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

71.     At all times relevant to this action, defendant NORTH CHINA INDUSTRIES NORINCO, INC.  ("Norinco") was and still is a corporation organized and existing under the laws of China with its principal place of business in China.  At all times relevant to this action, Norinco manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

72.     At all times relevant to this action, defendant PARA-ORDNANCE

MANUFACTURING, INC. ("Para-Ordnance") was and still is a corporation organized and existing under the laws of the State of Canada with its principal place of business in Ontario, Canada. At all times relevant to this action, Para-Ordnance manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

73.    At all times relevant to this action, defendant PARA-ORDNANCE, INC. ("Para-Ordnance") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida. At all times relevant to this action, Para-Ordnance manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

74.    At all times relevant to this action, defendant PHOENIX ARMS, INC. ("Phoenix Arms") was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all times relevant to this action, Phoenix Arms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

75.    At all times relevant to this action, defendant RAVEN ARMS, INC. ("Raven") was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all times relevant to this action, Raven manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

76.    At all times relevant to this action, defendant REPUBLIC ARMS ("Republic") was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all times relevant to this action, Republic

manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

77.    At all times relevant to this action, defendant ROSSI S.A. ("Rossi") was and still is a corporation organized and existing under the laws of Brazil with its principal place of business in Brazil. At all times relevant to this action, Rossi manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

78.    At all times relevant to this action, defendant SGS IMPORTS INTERNATIONAL, INC. ("SGS International") was and still is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times relevant to this action, SGS Imports International, Inc. manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

79.    At all times relevant to this action, defendant SIGARMS, INC. ("Sigarms") was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Hampshire. At all times relevant to this action, Sigarms manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

80.    At all times relevant to this action, defendant SIGARMS/SAUER ("Sigarms Sauer") was and still is a corporation organized and existing under the laws of Germany with its principal place of business in Germany. At all times relevant to this action, Sigarms Sauer manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

81.     At all times relevant to this action, defendant SMITH & WESSON CORP. ("Smith & Wesson") was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Massachusetts.  At all times relevant to this action, Smith & Wesson manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

82.     At all times relevant to this action, defendant STAR, BONIFACIO ECHEVERRIA S.A. ("Star") was and still is a corporation organized and existing under the laws of Spain with its principal place of business in Spain.  At all times relevant to this action, Star manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

83.     At all times relevant to this action, defendant STURM, RUGER & COMPANY, INC. ("Sturm Ruger") was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Connecticut.  At all times relevant to this action, Sturm Ruger manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

84.     At all times relevant to this action, defendant SUNDANCE INDUSTRIES, INC. ("Sundance") was and still is a corporation organized and existing under the laws of the State of California with its principal place of business in California.  At all times relevant to this action, Sundance manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

85.     At all times relevant to this action, defendant S.W. DANIEL, INC. ("S.W. Daniel") was and still is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Tennessee.  At all times relevant to this action,

S.W. Daniel manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

86.    At all times relevant to this action, defendant TANFOGLIO S.r.l. ("Tanfoglio") was and still is a corporation organized and existing under the laws of Italy with its principal place of business in Italy.  At all times relevant to this action, Tanfoglio manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

87.    At all times relevant to this action, defendant TAURUS HOLDINGS, INC. ("Taurus Holdings") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida. At all times relevant to this action, Taurus Holdings manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

88.    At all times relevant to this action, defendant TAURUS INTERNATIONAL MANUFACTURING, INC.  ("Taurus") was and still is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Florida.  At all times relevant to this action, Taurus manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

89.    At all times relevant to this action, defendant FORJAS TAURUS, S.A. ("Forjas Taurus") was and still is a corporation organized and existing under the laws of Brazil with its principal place of business in Brazil.  At all times relevant to this action, Taurus Forjas manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

90.    At all times relevant to this action, defendant THOMPSON/CENTER ARMS

COMPANY, INC. ("Thompson") was and still is a corporation organized and existing under the laws of the State of New Hampshire with its principal place of business in New Hampshire. At all times relevant to this action, Thompson manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

91.    At all times relevant to this action, defendant UBERTI ALDO ("Uberti Aldo") was and still is a corporation organized and existing under the laws of Italy with its principal place of business in Italy. At all times relevant to this action, Uberti Aldo manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

92.    At all times relevant to this action, defendant UBERTI (USA), INC. ("Uberti USA") was and still is a corporation organized and existing under the laws of the Sate of Connecticut with its principal place of business in Connecticut. At all times relevant to this action, Uberti USA manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

93.    At all times relevant to this action, defendant ULTRA LIGHT ARMS, INC. ("Ultra Light") was and still is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business in West Virginia. At all times relevant to this action, Ultra Light manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

94.    At all times relevant to this action, defendant WALTHER GmbH ("Walther") was and still is a corporation organized and existing under the laws of Germany with its principal place of business in Germany. At all times relevant to this action, Walther manufactured,

assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

95.     At all times relevant to this action, defendant SYLVIA DANIEL was and still is a citizen of the State of Tennessee, and the owner of S.W. Daniel, Inc., Cobray and Full Metal Jacket. Defendant Sylvia Daniel organized or caused to be organized the corporations S.W. Daniel, Cobray and Full Metal Jacket under the laws of the State of Tennessee for the purposes of operating firearm manufacturing, assembly and distribution companies and, upon information and belief, defendant Sylvia Daniel has held the office of President of each corporation from the dates of incorporation to the present time. Defendant Sylvia Daniel, as the alter ego of defendants, S.W. Daniel, Inc., Cobray and Full Metal Jacket, is and has been managing, controlling and conducting the affairs of the corporations since their incorporation, as though they were defendant Sylvia Daniel's own businesses and has used defendant corporations for the purpose of defrauding plaintiff and others similarly situated.

96.     At all times relevant to this action, defendant WAYNE DANIEL was and still is a citizen of the State of Tennessee, and is the owner of defendants S.W. Daniel, Inc., Cobray and Full Metal Jacket. Defendant Wayne Daniel organized or caused to be organized the corporations S.W. Daniel, Inc., Cobray and Full Metal Jacket under the laws of the State of Tennessee for the purposes of operating firearm manufacturing, assembly and distribution companies and, upon information and belief, defendant Wayne Daniel has held the office of President from the dates of incorporation to the present time. Defendant Wayne Daniel, as the alter ego of defendants, S.W. Daniel, Inc., Cobray and Full Metal Jacket, is and has been managing, controlling and conducting the affairs of the corporations since their incorporation, as though they were defendant Wayne Daniel's own businesses and has used defendant

-26-

corporations for the purpose of defrauding plaintiff and others similarly situated.

97.   At all times relevant to this action, on information and belief defendant  EMCO, INC. ("Emco") was and still is a foreign corporation with its principal place of business in Alabama . At all times relevant to this action, Emco manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

98.   At all times relevant to this action, defendant BERETTA HOLDINGS, S.p.A. ("Beretta Holdings") was and still is a corporation organized and existing under the laws of Italy, with its principal place of business in Italy.  Upon information and belief, at all times relevant to this action, Beretta Holdings was the parent corporation for Beretta U.S.A. and for defendant Fabricca D'Armi Pietro Beretta and through its subsidiaries manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

99.   At all times relevant to this action, upon information and belief, defendant LEINAD, INC. ("Leinad") was and still is a foreign corporation with its principal place of business in Tennessee. At all times relevant to this action, Leindad manufactured, assembled and/or imported handguns, which were marketed, distributed and/or sold within the United States, including the State of New York.

100.   At all times relevant to this action, defendant GALENA INDUSTRIES was and still is a foreign corporation with its principal place of business located in South Dakota.  At all times relevant to this action, Galena Industries manufactured, assembled and/or imported handguns which were marketed and/or sold within the United States, including the State of New York.

101.   At all times relevant to this action, defendant DAVIS INDUSTRIES ("Davis")
was and still is a corporation organized and existing under the laws of the State of California.
Davis filed for Chapter 11 bankruptcy in or around 1999 in the United States Bankruptcy Court
in and for the Central District of California.  Upon information and belief, that bankruptcy was
rejected in 2000.  At all times relevant to this action, Davis manufactured, assembled and/or
imported handguns, which were marketed, distributed and/or sold within the United States,
including the State of New York.

102.   At all times relevant to this action, defendant TALON INDUSTRIES, INC.
("Talon") was and still is a corporation organized and existing under the laws of the State of
Montana with its principal place of business in Montana.  At all times relevant to this action,
Talon manufactured, assembled and/or imported handguns, which were marketed, distributed
and/or sold within the United States, including the State of New York.

103.   At all times relevant to this action, WALTHER USA LLC was and still is a
corporation organized and existing under the laws of the State of Massachusetts with its
principal place of business in Springfield, Massachusetts.  At all times relevant to this action,
Walther USA manufactured, assembled and/or imported handguns, which were marketed,
distributed and/or sold within the United States, including the State of New York

104.   At all times relevant to this action, BRUCE JENNINGS was a resident of the
State of California and the State of Nevada and, upon information and belief, a citizen of the
State of Nevada, conducting the business of BRYCO ARMS and B.L.JENNINGS, INC. in both
states.

105.   At all times relevant to this action, BRUCE JENNINGS was the alter ego of the
corporate entities BRYCO ARMS and B.L.JENNINGS INC., over which he exerted complete

-28-

control, wholly without regard to the corporate structure or formalities of the two corporations.

106.   At all times relevant to this action, BRUCE JENNINGS operated and directed the manufacture, assembly, marketing, sale and distribution of handguns under the names of BRYCO ARMS and B.L. JENNINGS INC.

107.   Upon information and belief, BRUCE JENNINGS has stripped the two corporations of all assets and secreted those assets into various trusts held by the children of Bruce Jennings and Janice Jennings, that is Rhonda Jennings Nevada Trust, Kimberly Jennings Nevada Trust, Bradley Jennings Nevada Trust, and into at least one holding company, comprised of the trusts,   RKB Investments, Inc. , all of which are wholly controlled and directed by BRUCE JENNINGS

108.   At all times relevant to this action, BRUCE JENNINGS has undercapitalized and underinsured the two corporations, BRYCO ARMS and B.L.JENNINGS and has conducted the businesses with disregard for manufacturing quality and design, thus resulting in dangerous and defective  products that do not function as intended;  and in disregard for marketing and distributional safety so that disproportionate numbers of guns made, assembled, marketed and distributed by BRYCO ARMS and B.L.JENNINGS, INC. are used in crime over a number of years.

### Defendant Distributors

109.   Defendant ACUSPORT CORPORATION is a citizen of the State of Ohio having been organized under the laws of Ohio and having its principal place of business in Ohio.

110.   Defendant ACUSPORT is a national firearms wholesaler-distributor and, at all times relevant to this action, ACUSPORT marketed, distributed and sold handguns throughout the United States, including the State of New York.

111.    Upon information and belief, at all times relevant to this action, defendant ACUSPORT had and maintained a license from the Bureau of Alcohol Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

112.    Defendant ALAMO LEATHER GOODS, INC. is a citizen of the State of Texas having been organized under the laws of Texas and having its principal place of business in Texas.

113.    Defendant ALAMO LEATHER GOODS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, ALAMO LEATHER GOODS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

114.    Upon information and belief, at all times relevant to this action, defendant ALAMO LEATHER GOODS, INC. had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

115.    Defendant ALL-SPORTS, LLC is a citizen of the State of Oregon having been organized under the laws of Oregon and having its principal place of business in Oregon.

116.    Defendant ALL-SPORTS, LLC is a national  firearms wholesaler-distributor and, at all times relevant to this action, ALL-SPORTS, LLC marketed, distributed and sold handguns throughout the United States, including the State of New York.

117.    Upon information and belief, at all times relevant to this action, defendant ALL-SPORTS, LLC had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to

acquire and sell firearms, including handguns.

118.    Defendant ABN SHOOTING SPORTS SUPPLY, INC. D/B/A ABN SPORTS

SUPPLY, INC., is a citizen of the State of Ohio having been organized under the laws of Ohio

and having its principal place of business in Ohio.

119.    Defendant ABN SHOOTING SPORTS SUPPLY, INC. D/B/A ABN SPORTS

SUPPLY, INC., is a national firearms wholesaler-distributor and, at all times relevant to this

action, ABN SHOOTING SPORTS SUPPLY, INC. D/B/A ABN SPORTS SUPPLY, INC.

marketed, distributed and sold handguns throughout the United States, including the State of

New York.

120.    Upon information and belief, at all times relevant to this action, defendant ABN

SHOOTING SPORTS SUPPLY, INC. D/B/A ABN SPORTS SUPPLY, INC., had and

maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF")

known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell

firearms, including handguns.

121.    Defendant BANGERS, L.P., is a citizen of the State of Alabama having been

organized under the laws of Alabama and having its principal place of business in Alabama.

122.    Defendant BANGERS, L.P. is a national firearms wholesaler-distributor and, at

all times relevant to this action, BANGERS, L.P. marketed, distributed and sold handguns

throughout the United States, including the State of New York.

123.    Upon information and belief, at all times relevant to this action, defendant

BANGERS, L.P., had and maintained a license from the Bureau of Alcohol, Tobacco and

Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting

defendant to acquire and sell firearms, including handguns.

124.   Defendant BILL HICK'S AND COMPANY, LTD. is a citizen of the State of Minnesota having been organized under the laws of Minnesota and having its principal place of business in Minnesota.

125.   DEFENDANT BILL HICK'S AND COMPANY, LTD. is a national firearms wholesaler-distributor and, at all times relevant to this action, BILL HICK'S AND COMPANY, LTD. marketed, distributed and sold handguns throughout the United States, including the State of New York.

126.   Upon information and belief, at all times relevant to this action, defendant BILL HICK'S AND COMPANY, LTD. had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

127.   Defendant BONITZ BROTHERS, INC. is a citizen of the State of Pennsylvania having been organized under the laws of Pennsylvania and having its principal place of business in Pennsylvania.

128.   Defendant BONITZ BROTHERS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, BONITZ BROTHERS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

129.   Upon information and belief, at all times relevant to this action, defendant BONITZ BROTHERS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

130.   Defendant BRAZAS SPORTING ARMS, INC. is a citizen of the State of Massachusetts  having been organized under the laws of Massachusetts and having its principal

-32-

place of business in Massachusetts.

131.    Defendant BRAZAS SPORTING ARMS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, BRAZAS SPORTING ARMS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

132.    Upon information and belief, at all times relevant to this action, defendant BRAZAS SPORTING ARMS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

133.    Defendant CABELA'S, INC. is a citizen of the State of Nebraska having been organized under the laws of Nebraska and having its principal place of business in Nebraska.

134.    Defendant CABELA'S, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, CABELA'S, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

135.    Upon information and belief, at all times relevant to this action, defendant CABELA'S, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

136.    Defendant CAMFOUR, INC., Inc. is a citizen of the State of Massachusetts having been organized under the laws of Massachusetts and having its principal place of business in Massachusetts.

137.    Defendant CAMFOUR, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, CAMFOUR, INC. marketed, distributed and sold handguns

throughout the United States, including the State of New York.

138.    Upon information and belief, at all times relevant to this action, defendant
CAMFOUR, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and
Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting
defendant to acquire and sell firearms, including handguns.

139.    Defendant CHATTANOOGA SHOOTING SUPPLIES, INC.is a citizen of the
State of Tennessee having been organized under the laws of Tennessee and having its principal
place of business in Tennessee.

140.    Defendant CHATTANOOGA SHOOTING SUPPLIES, INC., is a national
firearms wholesaler-distributor and, at all times relevant to this action, CHATTANOOGA
SHOOTING SUPPLIES, INC. marketed, distributed and sold handguns throughout the United
States, including the State of New York.

141.    Upon information and belief, at all times relevant to this action, defendant
CHATTANOOGA SHOOTING SUPPLIES, INC., had and maintained a license from the
Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms
license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

142.    Defendant CSI SPORTS, LLC is a citizen of the State of Minnesota having been
organized under the laws of Minnesota and having its principal place of business in Minnesota.

143.    Defendant CSI SPORTS, LLC is a national firearms wholesaler-distributor and, at
all times relevant to this action, CSI SPORTS, LLC marketed, distributed and sold handguns
throughout the United States, including the State of New York.

144.    Upon information and belief, at all times relevant to this action, defendant CSI
SPORTS, LLC, had and maintained a license from the Bureau of Alcohol, Tobacco and

-34-

Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

145.   Defendant DAVIDSON'S SUPPLY COMPANY, INC. is a citizen of the State of Arizona having been organized under the laws of Arizona and having its principal place of business in Arizona.

146.   Defendant DAVIDSON'S SUPPLY COMPANY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, DAVIDSON'S SUPPLY COMPANY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

147.   Upon information and belief, at all times relevant to this action, defendant DAVIDSON'S SUPPLY COMPANY, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

148.   Defendant DIXIE SHOOTERS SUPPLY, INC. is a citizen of the State of Arizona having been organized under the laws of Arizona and having its principal place of business in Arizona.

149.   Defendant DIXIE SHOOTERS SUPPLY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, DIXIE SHOOTERS SUPPLY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

150.   Upon information and belief, at all times relevant to this action, defendant DIXIE SHOOTERS SUPPLY, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL")

permitting defendant to acquire and sell firearms, including handguns.

151.   Defendant ELLETT BROTHERS is a citizen of the State of South Carolina having been organized under the laws of South Carolina and having its principal place of business in South Carolina.

152.   Defendant ELLETT BROTHERS is a national firearms wholesaler-distributor and, at all times relevant to this action, ELLETT BROTHERS marketed, distributed and sold handguns throughout the United States, including the State of New York.

153.   Upon information and belief, at all times relevant to this action, defendant ELLETT BROTHERS had and maintained a license from the Bureau of Alcohol Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting it to acquire and sell firearms, including handguns.

154.   Defendant EUCLID AVENUE SALES, CO. is a citizen of the State of Georgia having been organized under the laws of Georgia and having its principal place of business in Georgia.

155.   Defendant EUCLID AVENUE SALES, CO. is a national firearms wholesaler-distributor and, at all times relevant to this action, EUCLID AVENUE SALES, CO. marketed, distributed and sold handguns throughout the United States, including the State of New York.

156.   Upon information and belief, at all times relevant to this action, defendant EUCLID AVENUE SALES, CO. had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

157.   Defendant FABER BROTHERS, INC. is a citizen of the State of Illinois having been organized under the laws of Illinois and having its principal place of business in Illinois.

158.   Defendant FABER BROTHERS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, FABER BROTHERS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

159.   Upon information and belief, at all times relevant to this action, defendant FABER BROTHERS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

160.   Defendant FANNING WHOLESALE, INC. is a citizen of the State of Idaho having been organized under the laws of Idaho and having its principal place of business in Idaho.

161.   Defendant FANNING WHOLESALE, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, FANNING WHOLESALE, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

162.   Upon information and belief, at all times relevant to this action, defendant FANNING WHOLESALE, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

163.   Defendant FOX WHOLESALE, INC. is a citizen of the State of Michigan having been organized under the laws of Michigan and having its principal place of business in Michigan.

164.   Defendant FOX WHOLESALE, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, Fox Wholesale, Inc. marketed, distributed and sold handguns throughout the United States, including the State of New York.

-37-

165.    Upon information and belief, at all times relevant to this action, defendant FOX WHOLESALE, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

166.    Defendant GLEN ZANDERS FUR AND SPORTING GOODS, CO. is a citizen of the State of Illinois having been organized under the laws of Illinois and having its principal place of business in Illinois.

167.    Defendant GLEN ZANDERS FUR AND SPORTING GOODS, CO. is a national firearms wholesaler-distributor and, at all times relevant to this action, GLEN ZANDERS FUR AND SPORTING GOODS, CO. marketed, distributed and sold handguns throughout the United States, including the State of New York.

168.    Upon information and belief, at all times relevant to this action, defendant GLEN ZANDERS FUR AND SPORTING GOODS, CO., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

169.    Defendant GO SPORTSMEN SUPPLY, INC. is a citizen of the State of Montana having been organized under the laws of Montana and having its principal place of business in Montana.

170.    Defendant GO SPORTSMEN SUPPLY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, GO SPORTSMEN SUPPLY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

171.    Upon information and belief, at all times relevant to this action, defendant GO SPORTSMEN SUPPLY, INC., had and maintained a license from the Bureau of Alcohol,

Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL")

permitting defendant to acquire and sell firearms, including handguns.

172.    Defendant HENRY'S TACKLE, LLC is a citizen of the State of North Carolina

having been organized under the laws of North Carolina and having its principal place of

business in North Carolina.

173.    Defendant HENRY'S TACKLE, LLC is a national firearms wholesaler-

distributor and, at all times relevant to this action, HENRY'S TACKLE, LLC marketed,

distributed and sold handguns throughout the United States, including the State of New York.

174.    Upon information and belief, at all times relevant to this action, defendant

HENRY'S TACKLE LLC, had and maintained a license from the Bureau of Alcohol, Tobacco

and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL")

permitting defendant to acquire and sell firearms, including handguns.

175.    Defendant HICKS, INC. is a citizen of the State of Alabama having been

organized under the laws of Alabama and having its principal place of business in Alabama.

176.    Defendant HICKS, INC. is a national firearms wholesaler-distributor and, at all

times relevant to this action, HICKS, INC. marketed, distributed and sold handguns throughout

the United States, including the State of New York.

177.    Upon information and belief, at all times relevant to this action, defendant

HICKS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms

(hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to

acquire and sell firearms, including handguns.

178.    Defendant HILL COUNTRY WHOLESALE is a citizen of the State of Texas

having been organized under the laws of Texas and having its principal place of business in

Texas.

179.    Defendant HILL COUNTRY WHOLESALE is a national firearms wholesaler-distributor and, at all times relevant to this action, HILL COUNTRY WHOLESALE marketed, distributed and sold handguns throughout the United States, including the State of New York.

180.    Upon information and belief, at all times relevant to this action, defendant HILL COUNTRY WHOLESALE, had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

181.    Defendant INTERSTATE ARMS, CORP. is a citizen of the State of Massachusetts having been organized under the laws of Massachusetts and having its principal place of business in Massachusetts.

182.    Defendant INTERSTATE ARMS, CORP. is a national firearms wholesaler-distributor and, at all times relevant to this action, INTERSTATE ARMS, CORP. marketed, distributed and sold handguns throughout the United States, including the State of New York.

183.    Upon information and belief, at all times relevant to this action, defendant INTERSTATE ARMS CORP., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

184.    Defendant JERRY'S SPORTS CENTER NORTH EAST, INC. is a citizen of the State of Connecticut having been organized under the laws of Connecticut and having its principal place of business in Connecticut.

185.    Defendant JERRY'S SPORTS CENTER NORTH EAST, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, JERRY'S SPORTS

-40-

CENTER NORTH EAST, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

186.   Upon information and belief, at all times relevant to this action, defendant JERRY'S SPORTS CENTER NORTH EAST, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

187.   Defendant JERRY'S SPORTS, INC., D/B/A JERRY'S SPORTS CENTER is a citizen of the State of Pennsylvania having been organized under the laws of Pennsylvania and having its principal place of business in Pennsylvania.

188.   Defendant JERRY'S SPORTS, INC. D/B/A JERRY'S SPORTS CENTER is a national firearms wholesaler-distributor and, at all times relevant to this action, JERRY'S SPORTS, INC. D/B/A JERRY'S SPORTS CENTER marketed, distributed and sold handguns throughout the United States, including the State of New York.

189.   Upon information and belief, at all times relevant to this action, defendant JERRY'S SPORTS, INC., D/B/A JERRY'S SPORTS CENTER had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

190.   Defendant KIESLER POLICE SUPPLY, INC. is a citizen of the State of Indiana having been organized under the laws of Indiana and having its principal place of business in Indiana.

191.   Defendant KIESLER POLICE SUPPLY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, KIESLER POLICE SUPPLY, INC. marketed,

-41-

distributed and sold handguns throughout the United States, including the State of New York.

192.   Upon information and belief, at all times relevant to this action, defendant KIESLER POLICE SUPPLY, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

193.   Defendant L.M. BURNEY, INC. is a citizen of the State of Texas having been organized under the laws of Texas and having its principal place of business in Texas.

194.   Defendant L.M. BURNEY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, L.M. BURNEY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

195.   Upon information and belief, at all times relevant to this action, defendant L.M. BURNEY, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

196.   Defendant LEW HORTON DISTRIBUTING COMPANY, INC. is a citizen of the State of Massachusetts having been organized under the laws of Massachusetts and having its principal place of business in Massachusetts.

197.   Defendant LEW HORTON DISTRIBUTING COMPANY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, LEW HORTON DISTRIBUTION COMPANY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

198.   Upon information and belief, at all times relevant to this action, defendant LEW HORTON DISTRIBUTOR COMPANY, INC., had and maintained a license from the Bureau of

Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

199. Defendant LIPSEY'S, INC. is a citizen of the State of Louisiana having been organized under the laws of Louisiana and having its principal place of business in Louisiana.

200. Defendant LIPSEY'S, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, LIPSEY'S, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

201. Upon information and belief, at all times relevant to this action, defendant LIPSEY'S, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

202. Defendant MKS SUPPLY, INC.is a citizen of the State of Ohio having been organized under the laws of Ohio and having its principal place of business in Ohio.

203. Defendant MKS SUPPLY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, MKS SUPPLY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

204. Upon information and belief, at all times relevant to this action, defendant MKS SUPPLY, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

205. Defendant MC GEE'S, INC. is a citizen of the State of Mississippi having been organized under the laws of Mississippi and having its principal place of business in Mississippi.

206. Defendant MC GEE'S, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, MC GEE'S, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

207. Upon information and belief, at all times relevant to this action, defendant MC GEE'S, INC. had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

208. Defendant MOUNTAIN STATES SPORTING GOODS, INC. is a citizen of the State of New Mexico having been organized under the laws of New Mexico and having its principal place of business in New Mexico.

209. Defendant MOUNTAIN STATES SPORTING GOODS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, MOUNTAIN STATES SPORTING GOODS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

210. Upon information and belief, at all times relevant to this action, defendant MOUNTAIN STATES SPORTING GOODS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

211. Defendant NATIONAL RECREATIONAL SHOOTING SUPPLY CO. D/B/A ASHLAND SHOOTING SUPPLY is a citizen of the State of Texas having been organized under the laws of Texas and having its principal place of business in Texas.

212. Defendant National Recreational Shooting Supply Co. d/b/a Ashland Shooting Supply is a national firearms wholesaler-distributor and, at all times relevant to this action,

National Recreational Shooting Supply Co. d/b/a Ashland Shooting Supply marketed, distributed and sold handguns throughout the United States, including the State of New York.

213.    Upon information and belief, at all times relevant to this action, defendant National Recreational Shooting Supply Co. d/b/a Ashland Shooting Supply, had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

214.    Defendant NATIONWIDE SPORTS DISTRIBUTORS, INC. is a citizen of the State of Pennsylvania having been organized under the laws of Pennsylvania and having its principal place of business in Pennsylvania.

215.    Defendant NATIONAL SPORTS DISTRIBUTORS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, NATIONAL SPORTS DISTRIBUTORS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

216.    Upon information and belief, at all times relevant to this action, defendant NATIONAL SPORTS DISTRIBUTORS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

217.    Defendant OUTDOOR SPORTS HEADQUARTERS, INC. is a citizen of the State of Ohio having been organized under the laws of Ohio and having its principal place of business in Ohio.

218.    Defendant OUTDOOR SPORTS HEADQUARTERS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, OUTDOOR SPORTS

-45-

HEADQUARTERS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

219.    Upon information and belief, at all times relevant to this action, defendant OUTDOOR SPORTS HEADQUARTERS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

220.    Defendant RILEY'S, INC. is a citizen of the State of Indiana having been organized under the laws of Indiana and having its principal place of business in Indiana.

221.    Defendant RILEY'S, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, RILEY'S, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

222.    Upon information and belief, at all times relevant to this action, defendant RILEY'S, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

223.    Defendant RON SHIRK'S SHOOTERS is a citizen of the State of Pennsylvania having been organized under the laws of Pennsylvania and having its principal place of business in Pennsylvania.

224.    Defendant RON SHIRK'S SHOOTERS SUPPLIES, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, RON SHIRK'S SHOOTERS SUPPLIES, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

225.    Upon information and belief, at all times relevant to this action, defendant RON

-46-

SHIRK'S SHOOTERS SUPPLIES, INC. had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

226.    Defendant RSR GROUP, INCORPORATED is a citizen of the States of Delaware and  Florida, having been organized under the laws of the State of Delaware  and having its principal place of business in Florida.

227.    Upon information and belief, defendant RSR GROUP INC. is the holding company for the stock of the eight (8) regional RSR warehouse subsidiary corporations.  The RSR companies share officers, directors and management.

228.    Defendant RSR MANAGEMENT COMPANY, INC. is a citizen of the State of Florida, having been organized under the laws of Florida with its principal place of business in the Florida.

229.    Upon information and belief, defendant RSR MANAGEMENT COMPANY manages and operates the RSR wholesale gun distribution business and provides management services for the wholesale operations of the regional warehouse subsidiaries, including accounting, human resources, supervision and support credit, purchasing from manufacturers, legal services, license acquisition, sales directives, establishment of sales policy and procedure, management information services, advertising and public relations.

230.    The business of RSR GROUP, RSR MANAGEMENT CO. and the subsidiary warehouses is to market, distribute and sell firearms. Upon information and belief, approximately 70% of the business conducted by the RSR corporations relates to the wholesale distribution of handguns.

231.    Upon information and belief,  at  all times relevant to this action, the RSR

-47-

defendants and their subsidiary warehouses had and maintained a license(s) from the Bureau of Alcohol Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting them to acquire and sell firearms, including handguns.

232.    At all relevant times, RSR marketed and distributed and sold firearms throughout the United States, including the State of New York.

233.    Upon information and belief, RSR has been instrumental in working with firearms industry members both at the manufacturer, wholesale-distributor and retail levels to establish standards governing the industry's operations and standards of care in the distribution of firearms.

234.    RSR Vice President was a founder and longtime president of one of the primary firearms industry trade associations, the American Shooting Sports Coalition (hereafter "ASSC")

235.    Defendant SG DISTRIBUTING is a citizen of the State of California having been organized under the laws of California and having its principal place of business in California.

236.    Defendant SG DISTRIBUTING is a national firearms wholesaler-distributor and, at all times relevant to this action, SG DISTRIBUTING marketed, distributed and sold handguns throughout the United States, including the State of New York.

237.    Upon information and belief, at all times relevant to this action, defendant SG DISTRIBUTING, had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

238.    Defendant SCOTT WHOLESALE COMPANY, INC. is a citizen of the State of North Carolina having been organized under the laws of North Carolina and having its principal

-48-

place of business in North Carolina.

239.   Defendant SCOTT WHOLESALE COMPANY, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, SCOTT WHOLESALE COMPANY, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

240.   Upon information and belief, at all times relevant to this action, defendant SCOTT WHOLESALE COMPANY, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

241.   Defendant SCOTT'S, INC. is a citizen of the State of Florida having been organized under the laws of Florida and having its principal place of business in Florida.

242.   Defendant SCOTT'S, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, SCOTT'S, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

243.   Upon information and belief, at all times relevant to this action, defendant SCOTT'S, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

244.   Defendant SIMMON'S GUN SPECIALTIES, INC. is a citizen of the State of Kansas having been organized under the laws of Kansas and having its principal place of business in Kansas.

245.   Defendant SIMMON'S GUN SPECIALTIES, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, SIMMON'S GUN

-49-

SPECIALTIES, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

246.    Upon information and belief, at all times relevant to this action, defendant SIMMON'S GUN SPECIALTIES, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

247.    Defendant SOUTHERN OHIO GUN, INC. is a citizen of the State of Ohio having been organized under the laws of Ohio and having its principal place of business in Ohio.

248.    Defendant SOUTHERN OHIO GUN, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, SOUTHERN OHIO GUN, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

249.    Upon information and belief, at all times relevant to this action, defendant SOUTHERN OHIO GUN, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

250.    Defendant SPORTS SOUTH, INC. is a citizen of the State of Louisiana having been organized under the laws of Louisiana and having its principal place of business in Louisiana.

251.    Defendant SPORTS SOUTH, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, SPORTS SOUTH, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

252.    Upon information and belief, at all times relevant to this action, defendant

-50-

SPORTS SOUTH, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

253.    Defendant SPORTS, INC. is a citizen of the State of Montana having been organized under the laws of Montana and having its principal place of business in Montana.

254.    Defendant SPORTS, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, SPORTS, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

255.    Upon information and belief, at all times relevant to this action, defendant SPORTS, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

256.    Defendant THE SPORTSMEN'S GUIDE, INC. is a citizen of the State of Minnesota having been organized under the laws of Minnesota and having its principal place of business in Minnesota.

257.    Defendant THE SPORTSMEN'S GUIDE, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, THE SPORTSMEN'S GUIDE, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

258.    Upon information and belief, at all times relevant to this action, defendant THE SPORTSMEN'S GUIDE, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

259.   Defendant VALOR CORPORATION is a citizen of the State of Florida having been organized under the laws of Florida and having its principal place of business in Florida.

260.   Defendant VALOR CORPORATION is a national firearms wholesaler-distributor and, at all times relevant to this action, VALOR CORPORATION marketed, distributed and sold handguns throughout the United States, including the State of New York.

261.   Upon information and belief, at all times relevant to this action, defendant Valor CORPORATION had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

262.   Defendant WALTER CRAIG, INC. is a citizen of the State of Alabama having been organized under the laws of Alabama and having its principal place of business in Alabama.

263.   Defendant WALTER CRAIG, INC. is a national firearms wholesaler-distributor and, at all times relevant to this action, WALTER CRAIG, INC. marketed, distributed and sold handguns throughout the United States, including the State of New York.

264.   Upon information and belief, at all times relevant to this action, defendant WALTER CRAIG, INC., had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

265.   Defendant WAREHOUSE 610 is a citizen of the State of Idaho having been organized under the laws of Idaho and having its principal place of business in Idaho.

266.   Defendant WAREHOUSE 610 is a national firearms wholesaler-distributor  and, at all times relevant to this action, WAREHOUSE 610 marketed, distributed and sold handguns

-52-

throughout the United States, including the State of New York.

267.    Upon information and belief, at all times relevant to this action, defendant WAREHOUSE 610, had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

268.    Defendant WILLIAMS SHOOTERS SUPPLY is a citizen of the State of Illinois having been organized under the laws of Illinois and having its principal place of business in Illinois.

269.    Defendant WILLIAMS SHOOTERS SUPPLY is a national firearms wholesaler-distributor and, at all times relevant to this action, WILLIAMS SHOOTERS SUPPLY marketed, distributed and sold handguns throughout the United States, including the State of New York.

270.    Upon information and belief, at all times relevant to this action, defendant WILLIAMS SHOOTERS SUPPLY had and maintained a license from the Bureau of Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter "FFL") permitting defendant to acquire and sell firearms, including handguns.

271.    Defendant WORLDWIDE SPORTS NETWORK is a citizen of the State of Pennsylvania having been organized under the laws of Pennsylvania and having its principal place of business in Pennsylvania.

272.    Defendant WORLDWIDE SPORTS NETWORK is a national firearms wholesaler-distributor and, at all times relevant to this action, WORLDWIDE SPORTS NETWORK marketed, distributed and sold handguns throughout the United States, including the State of New York.

273.   Upon information and belief, at all times relevant to this action, defendant
WORLDWIDE SPORTS NETWORK, had and maintained a license from the Bureau of
Alcohol, Tobacco and Firearms (hereafter "ATF") known as a federal firearms license (hereafter
"FFL") permitting defendant to acquire and sell firearms, including handguns.

## IV.
## GENERAL FACTUAL ALLEGATIONS

274.   The widespread availability and use of handguns is a national problem of
disastrous health, social and economic proportions.  Handguns are involved in the deaths of
approximately 34,000 people each year and are the instrumentalities most commonly used in
homicides.  Handguns were used to commit 69% of all homicides in 1995 and 68% of all
homicides in 1996.

275.   Plaintiff NAACP is particularly concerned about the level of handgun violence in
the African-American communities.   The human cost suffered by victims of handgun violence,
their families and communities is disproportionately borne by African-Americans. According to
a 1990 study by the Federal Centers for Disease Control ("CDC"), homicide is the leading cause
of death for black males aged 15-17 and handguns were involved in 78% of these homicides.
According to the same CDC study, a young African-American male is nine (9) times more
likely to be murdered that a young white male. The American Academy of Pediatrics reported
that handgun injuries among children in urban areas increased 300% from 1986 to 1988, and the
NAACP estimates that, if this rate of handgun violence continues, one out of every twenty-five
African-American males now in kindergarten will be wounded with a handgun before he
reaches the age of 18 years.  Furthermore, the FBI Homicide Reports for the years 1976 to 1998,
show that African-American children under the age of 5-years old are at least 4 times more
likely to be killed by homicide than their white peer group.  Despite overall decreases in

-54-

handgun-related crimes, according to a 1998 *Uniform Crime Report* compiled by the Department of Justice ("DOJ"), the only demographic group that did not experience a decrease in handgun-related homicides was that of black males between the ages of 14 and 24. The National Center for Health Statistics, DOJ *Crime Statistics Report* for 1998, revealed that two-thirds of homicide victims are non-white.

276.    Plaintiff NAACP is very concerned not only about the physical and social impact of handgun violence on African-Americans and other minorities, but also the economic cost. According to a 1994 report of the *New England Journal of Medicine*, nationally, $24 billion is spent annually on medical services for the victims of handgun-related violence, and of that figure, 85% goes to the care and treatment of people with no health insurance and who receive state assistance, a substantial portion of who are minorities. The collateral economic affect of handgun violence on communities of color is devastating.

### Defendants' Unsafe Handguns And Assault Weapons Pose A Clear Risk Of Harm To Millions Of Children

277.    The high level of handgun violence has had a particularly drastic impact on young people, particularly African-American males.   Between 1984 and 1987, the firearm death rate for ages 15-19 increased by approximately 10% to 14%. From 1987 to 1989, the rate of increase more than doubled, to between 23% and 25%. In 1990, 82% of all homicides of persons aged 15-19 were committed with handguns.  Homicide is the second-leading cause of death for youths aged 15-19.

278.    It is estimated by the CDC that 1.2 million elementary school-aged "latch-key" children have access to handguns in their homes.  There are handguns in millions of homes sold within the United States, including the State of New York.  One survey reports that 30% of handgun-owners who have children in their homes keep their handguns loaded.  Another survey

-55-

reports that 36% of handgun owners with children in their homes keep their handguns unlocked. In one survey, nearly 60% of children between the ages of 10 and 19 years responded that they can acquire a handgun should they want one. The same survey reports that 15% of children between the ages of 10 and 19 years reported that they had carried a handgun on their persons in the past 30 days.

279.    In one study, the General Accounting Office ("GAO") estimated that 23% of the annual 1,400-1,500 unintentional shooting deaths occur because handgun users are not aware that a round of ammunition has been loaded into the handgun's firing chamber. A significant percentage of the injuries and deaths caused by an undetected round of ammunition in the firing chamber occur when an unintended user of the handgun, such as a child, unintentionally shoots another person. According to the GAO, approximately 35% of all unintentional shooting deaths involve users of handguns who were between the ages of 13 and 18 years. Children are naturally attracted to accessible handguns and are either unaware of or can not fully comprehend the risks associated with handling a firearm.

280.    Currently, defendants design their handguns without incorporating safety features that could eliminate or substantially reduce injuries and death, in order to maximize profits and based on the fallacy that handguns without such safety devices are more effective.

281.    Child-proofing devices are not new and have been available on some models in the past. For example, defendant Smith & Wesson offered child-proof handguns from approximately 1888 to 1937. These weapons would not shoot unless a bar on the back of the grip was firmly pressed, and the pressure required to do this made it impossible or very difficult for a child to press the bar and pull the trigger simultaneously. Other child-proof designs have been patented, including one in 1926 (Patent No. 1,638,068) and another in 1977 (Patent No.

-56-

4,031,648).

282.   There are several feasible devices and designs that can be fitted to a firearm after purchase, which effectively personalize the handgun so that it cannot be used by a person other than the owner. New technology, if supported, developed and adopted by the defendants could effectively and with reasonable cost allow handguns to be personalized and rendered inoperable by any other user, particularly children, and would alert anyone in possession of a pistol that a round of ammunition is in the firing chamber.  The Johns Hopkins University School of Hygiene and Public Health's Center for Handgun Policy and Research has concluded that personalized handguns can eliminate many deaths and injuries by preventing the unauthorized firing of the firearm, and can be especially effective in preventing unintentional deaths and injuries to children and police officers.

283.   The failure of defendants to support, develop and adopt the aforementioned safety features, child proofing, and personalized gun technology is further evidence of the defendants' unwillingness to limit their sales, advertising distribution and marketing of handguns solely and exclusively to lawful owners, and discloses defendants' efforts to attract and serve the market of unlawful users.

## Defendants Intentionally Target Sales Of Unsafe Handguns To Children, Juveniles And Women

284.   After defendants experienced stagnant or declining sales in their traditional markets consisting overwhelmingly of men, they embarked on a concerted effort in the 1990s to promote sales to women and youth.  In 1992, one of the handgun industry's leading trade associations of which the defendants are members, the National Shooting Sports Foundations ("NSSF"), announced a "new focus on women and youngsters" and started a "Youth Education Program," all in a search for new customers and expansion of the handgun market.  At that time the NSSF stated that

-57-

"bringing women and youngsters to the shooting sports is the goal of fully half of" the NSSF's new

programs. The September/October 1992 issue of NSSF's magazine *SHOT Business* carried a

column by a noted celebrity in the industry, Grits Gresham, in which he said:

> There's a way to help insure that new faces and pocketbooks will
> continue to patronize your business: Use the schools . . . they can
> be a huge asset. Think about it. Schools collect, at one point, a
> large number of minds and bodies that are important to your future
> well-being. How else would you get these potential customers and
> future leaders together to receive your message about handguns
> and hunting, without the help of the schools....Schools are an
> opportunity. Grasp it.

285.    An NSSF pamphlet entitled *When Your Youngster Wants a Handgun* clearly

reveals that the industry places no age limit on the possession of handguns, stating, "Age is not

the major yardstick. Some youngsters are ready to start at 10, others at 14."

286.    The NSSF advertises in children's magazines, such as *Boys Life* and *Scouting*.

*Shooting Industry,* a journal catering to handgun dealers, reported that at a conference held by

the NSSF in 1996: "One important area addressed at the summit was youth involvement. Each

year scouting, 4-H, FFA and other programs introduce 3 million young people to recreational

shooting." All of these advertisements and programs are designed to enhance the defendants'

customer base and to encourage the purchase of the defendants' unsafe handguns.

287.    Defendants' advertisements and other promotional activities are also targeted at

women with children. For example, an advertisement by Colt in the July 1992 southeast

regional issue of *Ladies Home Journal* shows a woman leaning over her daughter at bedtime

with the headline "Self-protection is more than your right . . . it's your responsibility." Colt

placed a similar advertisement in the *SHOT Business* issue of March/April, 1993, but with the

emphasis placed on the bottom line: "You Might Think This Ad Is About Handguns. It's Really

About Doubling Your Business."

288.   Defendants design, manufacture, advertise and sell handguns for women and children, such as Smith & Wesson's *LadySmith* revolver and Harrington & Richardson's 929 *Sidekick* revolver, with full knowledge that many of these customers are unskilled and inexperienced in the use of handguns and lack an awareness of the dangers, injuries and death cause by their products.  Yet, unlike any other responsible industry, the defendants refuse to incorporate safety devices in their products that would substantially reduce the number of fatalities and serious injuries, which result from the use of handguns.

289.   The defendants' efforts to solicit sales from youth and women is designed and intended to increase the number of unsafe handguns in the homes of the American public, with the result that many of those handguns are accessible to young and inexperienced users. No mention is made in the defendants' advertisements of the statistical and anecdotal information referring to the deaths and injuries caused by handguns, particularly in the home context, and no warnings are provided, as they are for other much less lethal products.

290.   It is now generally recognized in the field of public health that introducing a firearm into the home is dangerous to the people who live there and to their family, friends and associates because it is demonstrably much more likely to be used against them than against an intruder or other aggressor.  Such uses include intentional shootings (often of a spouse), suicides, and unintentional/accidental shootings (most often involving children). The death of a household member is almost three times more likely in homes with handguns than in homes without them, and a handgun in the home is four times more likely to be involved in a fatal or non-fatal unintentional shooting than to be used to injure or kill in self-defense.

291.   The dangers of handguns and the consequences of widespread sales without restraints or limits have been well-known for many years.  For example, over 30 years ago a

staff report of the U.S. Commission on the Causes and Prevention of Violence, entitled

*Firearms and Violence in American Life* (1968), noted an increasing number of deaths and

injuries and concluded.

> [Americans] may seriously overrate the effectiveness of handguns
> in protection of their homes.  In our urbanized society the handgun
> is rarely an effective means of protecting the home against either
> the burglar or the robber. . . [A handgun in the home] provides a
> measure of comfort to a great many Americans, but for the
> homeowner, this comfort is largely an illusion bought at the high
> price of increased accidents, homicides, and more widespread
> illegal use of handguns.

## Defendants Fail To Exercise Control Over Production, Marketing And Distribution, Resulting In Purchase Of Their Handguns By Criminals And Other Prohibited Persons

292.   Defendants require nothing more than a copy of a dealer's federal handguns

license before supplying handguns to that dealer.  The requirements for a federal firearms

license are minimal: virtually any adult who is 21 years old or over, has no criminal record, has

business premises and complies with local laws can obtain a license.  In addition, there are

unlicenced dealers who sell handguns at gun shows and elsewhere, and who are

indistinguishable from licensed handguns dealers.

293.   As a result of the ready availability of defendants' handguns, homicides by youths

involving the use of handguns more than doubled between 1985 and 1992, although there was

no similar increase in non-handgun homicides.  Studies indicate that during this same period

handguns became "ubiquitous" in inner-city neighborhoods and were a major factor in the

doubling of the homicide rate both by and of those under 18 years of age.

294.   Defendants oversupply states with weak gun control laws and restrictions,

flooding them with substantially more handguns than their residents reasonably can be projected

to purchase, and thus facilitating the channeling of those handguns to cities, counties and states with stricter controls and restrictions.

295. Defendants target sales to states with weak gun control laws knowing that guns will be illegally trafficked to cities, counties and states with stronger gun control laws. These weak law jurisdictions, primarily in the Southeast, supply crime guns to all areas of the country. In 1999, Senator Charles E. Schumer published a report providing the leading out-of-state sources of guns nationally for the year 1998, which included: Georgia, Florida, Virginia, California, Texas, North Carolina, Mississippi, Ohio, Alabama, and Indiana. All but one of these gun exporting states have weak gun control laws.

296. Defendants have increased the production of particular handguns that are popular in criminal use. For example, over the past decade defendants have increased their production of 9-millimeter handguns, which are popular in the illicit drug trade and are the most frequently used in crime. This production increase was initiated even though defendants' own market research showed that the legitimate market for 9-millimeter handguns among law-abiding purchasers was already saturated. Moreover, defendants have designed and advertised particular features of their products specifically to appeal to purchasers with criminal intent. For example, defendant Navegar's brochure for its *Intratec* line states that a trademarked coating yields "excellent resistance to finger prints."

297.   Defendants in fact view the popularity of their handguns among criminals as a marketing advantage generating increased sales.  For example, the marketing and sales director for the *Intratec* line was candidly quoted in the *New York Times* as actually being pleased by the notorious reputation of the TEC-9 semiautomatic assault weapon, (one of the weapons used in the Columbine High School shootings): "It has just that advertising tingle to it.  Hey, it's talked about, it's read about, the media write about it. That generates more sales for me.  It might sound cold and cruel, but I'm sales-oriented."

298.   The number of guns in criminal hands is extremely large:  almost one-fourth of the total annual domestic handgun production moves quickly into criminal hands.   Illegal guns constitute the second largest market segment for defendants.

299.   The marketing and distribution structure, policies and practices established and maintained by defendants facilitate the criminal handgun market.  For example, the manufacturing defendants avoid any connection to or vertical integration with the distributors and dealers who sell their products. Moreover, they do not use available computerized inventory and sales tracking systems that are commonly and inexpensively used by other industries to limit and screen customers – particularly in businesses that produce dangerous or harmful products.

300.   The legal wholesale and retail markets established by defendants and the underground criminal market are substantially and directly connected.  According to Robert I. Hass, a former senior vice president of marketing and sales for defendant Smith & Wesson:

> The company and the industry as a whole are fully aware of the extent of the criminal misuse of handguns.  The company and the industry are also aware that the black market in handguns is not simply the result of stolen handguns but is due to the seepage of handguns into the illicit market from multiple thousands of unsupervised federal handguns licensees.  In spite of their

knowledge, however, the industry's position has consistently been to take no independent action to insure responsible distribution practices. . . .
I am familiar with the distribution and marketing practices of all of the principal U.S. handguns manufacturers and wholesale distributors and none of them, to my knowledge, . . . investigate, screen or supervise the wholesale distributors and retail outlets that sell their products to insure that their products are distributed responsibly.

301.   Although the defendants are aware that the illicit market in handguns is in large part the result of seepage of handguns into the illicit market from the lawful handgun market, they have persistently failed and refused to exercise any control over the channels of distribution for their products.  It is apparent that defendants have intentionally cultivated these distribution channels.   In fact, a June, 2000 Report issued by the BATF entitled "Following the Gun: Enforcing Federal Laws Against Firearms Traffickers" reveals a direct correlation linking supply from the legal market to the underground market.  Astonishingly, although FFLs were involved in under 10% of the trafficking investigations performed by the BATF, they were associated with the largest number of diverted firearms, over 40,000 guns, nearly half of the total number of trafficked firearms documented during the two year period.  The 133 investigations of FFLs revealed a variety of violations including a failure to keep required records, transfers to prohibited persons, offenses involving National Firearms Act weapons, making false entries in record books, and conducting illegal out-of-state transfers.  Yet defendants have failed to impose on other defendants, distributors and retailers, distributors franchise relationships or other contractual arrangements under which manufacturers could regulate the distributors' and retailers' disposal of their handguns.  Instead, the defendants have favored a lack of control and responsibility, making liberal use of large numbers of low-end dealers/retailers, with respect to whose activities the defendants take a "hear-no-evil, see-no-

evil" approach.

302.   Defendants facilitate the movement of vast numbers of guns, almost one-quarter of their domestic annual production, by a distribution system that encourages high volume sales without a concomitant adherence to regulatory compliance and, more importantly, safe sales practices.  These distribution mechanisms rest on a "hear no evil, see no evil" management structure, that relies on the broadest possible market coverage by unsupervised dealers, the majority of whom do not have a bona fide business premises for the conduct of a firearms business, operating without any controls by manufacturers or distributors except as to profit maximization.  The defendants' distribution practices have knowingly and intentionally fostered a network of gun traffickers who acquire guns through straw purchases and multiple sales from unsupervised federal firearms licensees, many of whom operate out of residences, other unrelated businesses such as barber shops, or out of gun shows.  These traffickers transport weapons for sale from the weak law areas to strong law jurisdictions where guns are more stringently regulated.  These trafficked guns are disproportionately used in crimes.

303.   Among other things, defendants have failed to:

1.)   request, maintain and use Bureau of Alcohol, Tobacco and Handguns ("BATF") tracing data to identify dealers who sell weapons that are repeatedly the subject of traces;

2.)   provide warnings to dealers about products that have been the frequent subject of ATF traces;

3.)   require dealers to keep accurate records of sales made in order to monitor the dealers' customer base and, in particular, to ensure that dealers do not make multiple sales to the same individual acting as a gun trafficker

-64-

and/or "straw" purchaser for prohibited persons;

4.)   require dealers to examine documentation from each purchaser prior to sale, including ensuring that each purchaser's firearm owner's identification card contains a valid address and that the other items of documentation provided by the purchaser are accurate;

5.)   require dealers to inquire as to a purchaser's intended use for the handgun in order to ensure that the handgun is proper for that intended use;

6.)   provide dealers with a detailed protocol with each weapons shipment outlining steps that need to be taken to minimize the risk of transfers to illegitimate purchasers;

7.)   otherwise train dealers to detect inappropriate purchasers such as straw purchasers and purchasers of more than one gun in a thirty (30) day period;

8.)   institute such other requirements that would enable control the channels of distribution and sale;

9.)   require dealers to maintain a bona fide place of business for firearms or sporting goods in an area zoned for commercial use and to maintain inventory, security and regulatory compliance systems.

304.   According to Kansas City stocking handgun dealer Robert Lockett, who was named 1993 Dealer of the Year by the National Alliance of Stocking Handgun Dealers, handgun manufacturers are aware of the implications of not policing handgun sales more vigilantly, and could do so by establishing direct franchise relationships with a limited number of handgun dealers, each of whom would have an exclusive sales territory. Each franchisee would be

subject to restrictions on the sale of handguns, including a ban on selling handguns at gun shows (all four of the handguns used in the Columbine High School massacre were obtained at gun shows); a ban on selling more than two or three handguns at a time; a requirement that dealers provide manufacturers with monthly sales reports; and other restrictions designed to prevent the sale of handguns to prohibited persons and eliminate flooding of the legal handgun market. Manufacturers could also reduce flooding the market with cheap and readily accessible handguns by ceasing to market handguns through discount mass retailers and by stopping the widespread publication of wholesale prices that facilitates the sale and purchase of handguns at lower prices, particularly at gun shows from licensed and unlicenced sellers with lower overhead.

305.   However, defendants acting individually, as well as collectively through their industry and trade associations NSSF, ASSC and SAAMI (and often in conjunction with the National Rifle Association), have vigorously opposed attempts to impose restrictions or controls on the marketing and distribution of handguns and assault weapons, and have consistently refused to implement effective measures to voluntarily police the sale of their handguns.  They have also consistently failed to provide with their handguns, either at the time of manufacture or by way of post-sale retrofit, any of several available devices or technologies which would effectively make their handgun safer and "personalize" their handguns so that they cannot be used by anyone other than the lawful owners.

## V.

## CLAIMS FOR RELIEF

## PUBLIC NUISANCE

306.   Plaintiff NAACP on behalf of itself and its individual members, and other persons

whose interests the plaintiff represents realleges and incorporates herein each and every allegation contained in paragraphs above.

307.   At all times relevant hereto, defendants were engaged in the business of manufacturing, importing, assembling, marketing, distributing and/or selling handguns within the United States, including the State of New York.

308.   Defendants had an obligation to plaintiff to conduct their businesses in such a manner as to avoid foreseeable risks of harm arising from the manufacture, importation, assembly, marketing, distribution and/or sale of their handguns, including the implementation of marketing and distribution practices designed to prevent or reduce the likelihood that the defendants' handguns would come into the ownership or possession of criminals, juveniles, the mentally ill, and other persons not lawfully authorized to own, possess or use such handguns.

309.   Over a considerable period of time prior to the commencement of this action, defendants manufactured, assembled, imported, marketed, advertised, distributed and sold guns for the underground market where guns are acquired illegally by persons who are prohibited by law from acquiring them.

310.   Over a considerable period of time prior to the commencement of this action, defendants sold disproportionate numbers of guns to other defendants and to retail outlets that they knew or had reason to know would transfer and/or facilitate the transfer of those guns into the hands of criminals, juveniles, and other persons prohibited by law from acquiring them.

311.   Defendants' conduct was unreasonable under the circumstances

312.   Defendants' conduct resulted in the proliferation of the underground market in crime guns and constituted a danger to the public health and welfare, a particular danger to the health and welfare of members of the NAACP, including Gladys Gerena, Kenneth McLaughlin,

Janice Sweeting and MonaLisa Harris, and other persons that the plaintiff organization represents and the organization itself.

313.   Defendants, by their unreasonable conduct and marketing practices, have knowingly created, contributed to, maintained and facilitated an underground illegal market that constitutes a public nuisance in that it has caused deaths and injuries to the public as a whole and in particular to plaintiffs' members, including but not limited to Gladys Gerena, Kenneth McLaughlin, Janice Sweeting and MonaLisa Harris, and African-Americans whose interests the plaintiff represents.

314.   The underground market created, contributed to, maintained and facilitated by the defendants constitutes a public nuisance and an unreasonable interference with plaintiff's rights. The plaintiff's members and other people of color represented by plaintiff have a right to be free from conduct that creates an unreasonable jeopardy to their public health, welfare and safety or evokes a reasonable apprehension of danger in their community.

315.   Defendants have knowingly and intentionally participated in the creation and perpetuation of a public nuisance through their unreasonable distribution system and have knowingly and intentionally established, supplied and maintained an over-saturated handgun market that facilitates easy access to handguns by criminals and other persons prohibited from purchasing or possessing handguns, including access by underage youths.  Defendants have full knowledge that their policies and practices will and regularly do result in the proliferation of guns in the underground market that in turn results in high levels of handgun deaths and injuries and will result in high levels of future handgun deaths and injuries to the public and particularly to the plaintiffs' members and African-Americans whose interests they represent located in cities throughout the United States, such as New York, Washington, D.C., Chicago and Los

-68-

Angeles.

316.   Defendants thereby substantially interfere with rights common to the general public and plaintiff's members and African-Americans whose interests plaintiff also represents by subjecting everyone who resides, works or travels in the United States to a climate of fear that permeates all public places.  Plaintiff's members and African-Americans, whose interests plaintiff also represents, however, have suffered special and particularized damages beyond that suffered by the public at large.  As a consequence of defendants' unreasonable marketing practices, the NAACP's members and African-Americans whose interests it represents, including the individual plaintiffs here, have disproportionately suffered death and injury, fear, and the future threat of death and injury.  An April 1994 study published by the United Stated Department of Justice Bureau of Justice Statistics reveals that African-Americans had the highest rate of handgun crime victimization for the years 1987-92.  African-Americans were 3 times as likely as whites to be victims of handgun crimes for those years, and for African-American males age 16-19, they were 4 times as likely to be victimized as whites.  As a further consequence of defendants' unreasonable marketing practices, the NAACP's members and African-Americans whose interests they represent have also been deprived of the enjoyment of public streets, sidewalks and parks, an interest in commerce, travel and the quality and tenor of daily life because of fear and apprehension of injury and the risk of injury.  A June 1994 study published by the United Stated Department of Justice Bureau of Justice Statistics shows that African-American households were more likely to identify crime as a problem in their neighborhoods for the years between 1985 through 1991.  This fear and perception of crime depicted by African-Americans directly correlates to a higher percentage of handgun victimization.

317.   The defendants' conduct is the direct and proximate cause of the deaths and injuries disproportionately suffered by NAACP members, including but not limited to the children of Gladys Gerena, Janice Sweeting and MonaLisa Harris as well as the injuries to Kenneth McLaughlin, and the African American community the plaintiff NAACP represents, and a significant and unreasonable interference with public safety and health and, in particular the safety and health of the plaintiff's members and the persons of color whom they represent, and an interference with their rights to be free from disturbance and unreasonable apprehension of danger to person and property.

318.   The defendants' conduct, if unabated will continue to threaten the health, safety and welfare of the public and in particular, the plaintiff's members and the African-American community the plaintiff represents.

319.   The harm to the plaintiff, its members and African-Americans whose interests plaintiff represents is special and particularized beyond those injuries suffered by the public at large and has no adequate or complete remedy at law.   Moreover, the harm that the plaintiff and its members and the persons they represent will suffer in the absence of injunctive relief or abatement is irreparable.   Plaintiff seeks injunctive relief including, but not limited to:

(1)   An order that each defendant establish the following mandatory requirements for each entity to which it transfers and sells guns, including other defendants, distributors and retailers:

(a)   no sales to any entity that sells to retail customers that are not stocking dealers;

(b)   no sales to any entity that sells to retail customers that are not storefront dealers

    (c)     distributors will not sell to retailers who do not maintain adequate liability insurance;

    (d)     distributors will not sell to retailers who do not maintain inventory requirements of     $250,000;

    (e)     distributors and retailers are not to engage in the sale of more than one (1) handgun to the same person in a thirty (30) day period;

    (f)     distributors and retailers must not have more than two (2) criminal trace requests in any six (6) month period;

    (g)     distributors and retailers must allow manufacturers to review distributor's and retailer's handguns acquisition and disposition records, aka "bound books", and all other records relating to sales including sales incentive records, at least four (4) times per year;

    (h)     distributors and retailers must supply state sales and data to manufacturers.

(2)    An order that each defendant will implement the following mandatory procedures which it will comply with:

    (a)     defendant will not market, distribute and sell handguns to other defendants, distributors and retailers who sell handguns at gun shows;

    (b)     defendant will procure, keep and maintain adequate liability insurance;

    (c)     defendant will conduct quarterly inspection of all distributors and retailers;

    (d)     defendant, acting in conjunction with all other defendants herein, will institute an industry-wide program of warranty revocation upon individual resale of handguns, unless the firearm is resold only through a bona fide stocking handgun retailer so that secondary sales are subject to

background checks under the Brady Handgun Violence Prevention Act, 18

U.S.C. §922.

(e)     defendant, acting in conjunction with all other defendants herein,

will institute and contribute to a fund for the education, supervision

and regulation of the approximately 16,000 stocking gun dealers.

(3)     An order requiring defendants to pay the costs of abating the nuisance in

an amount estimated at no less than Five Million ($5,000,000) dollars for

the establishment of an industry-wide safe sales monitoring and

distribution regulatory agency to enforce the judgment of the Court.

(4)     An order requiring defendants to pay the costs of abating the nuisance in

an amount estimated at no less than Five Million ($5,000,000) dollars for

the establishment of education programs designed to prevent gun

acquisition and resultant violence among young people.

(5)     An order requiring defendants to contribute an amount estimated at no less

than Ten Million ($10,000,000) for such other and further steps as may be

necessary for the abatement and amelioration of the nuisance.

WHEREFORE, plaintiff NAACP on behalf of itself and its members and other

persons whose interests the plaintiff represents, pray for judgment against the defendants, and

each of them jointly and severally, as follows:

A.     For an order directing that each defendant maintain a contract and/or franchise

agreement with its distributors and/or retailers to establish, implement and enforce the

following mandatory requirements of its distributors and/or retailers:

(1)     distributors will not sell to retailers who are non-stocking dealers;

-72-

(2)     distributors will not sell to retailers who are non-storefront dealers

(3)     distributors will not sell to retailers who do not maintain adequate liability insurance;

(4)     distributors will not sell to retailers who do not maintain inventory requirements of $250,000;

(5)     distributors and retailers are not to engage in the sale of more than one (1) handgun to the same person in a thirty (30) day period;

(6)     distributors and retailers must not have more than two (2) criminal trace requests in any six (6) month period;

(7)     distributors and retailers must allow manufacturers to review distributor's and retailer's handguns log at least four (4) times per year;

(8)     distributors and retailers must supply state sales and data to manufacturers.

B.     For an order directing that each defendant establish, implement and enforce the following mandatory procedures which it will comply with:

(1)     defendant will not market, distribute and sell handguns to other defendants,  distributors and retailers who sell handguns at handgun shows;

(2)     defendant will procure, keep and maintain adequate liability insurance;

(3)     defendant will conduct quarterly inspection of all distributors and retailers for     the purpose of insuring compliance with A(1) - (6) and B (1) and (2).

(4)     defendant, acting in conjunction with all other defendants herein, will institute an industry-wide program of warranty revocation upon individual resale of handguns, unless the firearm is resold only through a bona fide stocking handgun retailer so that secondary sales are subject to

background checks under the Brady Handgun Violence Prevention Act, 18 U.S.C. §922.

C.      For an order requiring that violations of provisions (A)(1-8) and (B)(1-4) will result in immediate termination of contract and/or franchise agreement and inability to sell defendants' products and withdrawal of that distributor or retailer's existing stock.

D.      For an order requiring defendants to institute and contribute to a fund for the education, supervision and regulation of approximately 16,000 stocking gun dealers.

E.      For an order requiring defendants to contribute an amount estimated at no less than Five Million ($5,000,000) dollars required to abate the nuisance and specifically for the establishment of an industry-wide safe sales monitoring and distribution regulatory agency to enforce the judgment of the Court.

F.      For an order requiring defendants to contribute an amount estimated at no less than Five Million ($5,000,000) dollars required to abate the nuisance and specifically for the establishment of education programs designed to prevent gun acquisition and resultant violence among young people.

G.      For an order requiring defendants to contribute an amount estimated at no less than Ten Million ($10,000,000) for such other and further steps as may be necessary for the abatement and amelioration of the nuisance.

H.      For reasonable attorneys' fees and costs;

I.    For such further relief as this Court deems just and proper.

WHEREFORE, Plaintiff NAACP prays that this Court enter judgment in its favor and award damages against all defendants in an amount to be determined at trial, award costs and attorneys fees, and for such other and further relief as this Court may deem just and proper.

DATED:     New York, New York
           June 10, 2002

                                        Respectfully submitted,

                                        *Elisa Barnes*

                                        ELISA BARNES (EB 4811)
                                        Office and P.O. Address
                                        111 Broadway, 4th Floor
                                        New York, New York 10006
                                        Tel: (212) 693-2330
                                        Fax: (212) 693-2334

                                        Dennis Courtland Hayes, Esq.,
                                        Angela Ciccolo, Esq.
                                        National Association for the Advancement of
                                        Colored People,   NAACP
                                        4805 Mt. Hope Drive
                                        Baltimore, Md. 21215
                                        (410) 358-8900

                                        ATTORNEYS FOR PLAINTIFFS

TO:
COUNSEL FOR DEFENDANTS
(Rider attached)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
NAACP,

               Plaintiff,               99 Civ 3999 (JBW)
                                         99 Civ 7037(JBW)

    -against-

AMERICAN ARMS, et al.          CERTIFICATE OF SERVICE

               Defendants,
--------------------------------------------------------X

      ELISA BARNES, an attorney duly admitted to the bar of this Court, hereby certifies as follows. I caused to be served copies of the Fourth Amended and Consolidated Complaint to be served by email and regular mail on June 11, 2002 to counsel for defendants listed on the attached rider.

Dated: New York, New York
      June 11, 2002

                               _Elisa Barnes_
                             ELISA BARNES (EB4811)

<u>. NAACP et al. v. A.A.ARMS, INC. et al.</u>
<u>SERVICE LIST</u>

**DEFENSE COUNSEL**

Terry F Moritz, Esq.
Roger A. Lewis, Esq.
Goldberg Kohn Bell Black Rosenbloom & Moritz
55 East Monroe Street
Suite 3700
Chicago, Illinois 60603
(312) 201-3900
fax (312)332-2196
Rep:  Walther GmbH

Thomas E. Healy, Esq.
Pino & Associates
Westchester Financial Center
50 Main Street
White Plains, NY 10606
Phone: (914) 946-0600
Fax: (914) 946-0650
Email: www.pinolaw.com
Represents: Ceska Zbrojovka, CZ USA, Colts Manufacturing Co., Inc., Excell Industries

Thomas P. Battistoni, Esq.
Balber Pickard Battistoni
Maldonado & Van Der Tuin, P.C.
1370 Avenue of the Americas
New York, New York 10019-4602
 (212) 246-2400
(212) 765-4212
tbattistoni@bpbmv.com
Represents: Carl Walther GmbH

Alan Aronstein
High Standard Manufacturing Company, Inc.
Firearms International, Inc.
10606 Hempstead Hwy., Suite 116
Houston, TX 77092
Phone: (713) 462-4200
Fax: (713) 686-9699

Steven Harfenist, Esq.
Friedman & Harfenist
3000 Marcus Avenue, Suite 2E1
Lake Success, NY 11042
Phone: (516) 775-5800 or
(718) 279-8181
Fax: (516) 775-4082
Represents: Sylvia Daniel

Jeffrey S. Nelson
Shook, Hardy & Bacon LLP
One Kansas City Place
1200 Main Street
Kansas City, Missouri 64105-2118
Phone: (816) 474-6550
Fax: (816) 421-5547
Represents: Smith & Wesson

Richard L. Mattiaccio, Esq.
Victor Jenesin, Esq.
Pavia & Harcourt
600 Madison Avenue
New York, N.Y.10022
Phone: (212) 980-3500
Fax: (212) 980-3185
Represents: Fabrica D'Armi Pietro Beretta S.P.A.

Thomas E. Fennell, Esq.
Jones, Day, Reavis & Pogue
Jones Day Building
2727 North Harwood
Dallas, T.X. 75201
Phone: (214) 969-5136
Fax: (214) 969-5100
Represents: Colts Manufacturing Co., Inc.

Pro Se Defendant
John Lenkey III, President
2121 Castlebridge Road
Midlothian, V.A. 23113
Phone: (804) 794-3744

Joel M. Cohen
Greenburg Traurig, LLP
885 Third Avenue
New York, NY 10022
REP: Smith & Wesson

Pro Se Defendant
Dirk A. Lindenbeck, Vice President
4811 Persimmon Court
Monroe, N.C. 28110-9314
Fax: (704) 289-5356

W.H. Conner, Esq.
Bank of America Building
524 South Austin Avenue, Suite 101
Georgetown, T.X. 78626
Phone: (512) 863-4576
Fax: (512) 869-3486
Represents: STI International

Robert L. Joyce, Esq.
Wilson, Elser, Moskowitz, Edelman,
& Dicker, LLP
150 East 42nd Street
New York, N.Y. 10017
Phone: (212) 490-3000
Fax: (212) 490-3038
Represents: Sigarms, Inc., Sigarms/Sauer

John F. Renzulli, Esq.
Renzulli & Rutherford
300 East 42nd Street, 18th Floor
New York, N.Y. 10017-5947
Phone: (212) 599-5533
Fax: (212) 599-5163
Represents: American Derringer Corp., Arms Technology, Inc., Bersa, Browning Arms
Co., Eagle Imports, European American Armory Corp., Freedom Arms, Inc., Glock, Inc.,
Israel Military Industries, K.B.I. Inc, Kel-Tec CNC Industries Inc., L.A.R.
Manufacturing, Inc., Magnum Research Inc., Maverick Arms, Inc., Navegar, Inc., North
American Arms, Para-Ordnance Manufacturing, Inc., Thompson/Center Arms,
Beemiller, Inc., Haskell Company, Tanfoglio Fratelli S.R.L, Arcadia, Astra, Savage,
SGS, Import Sports, Century, Hi-Point, H&R, Bryco, B.L. Jennings, Bruce Jennings,
Para Ordnance, Inc., Bond Arms, Inc.

Michael Branisa, Esq.
Tarics & Carrington
5005 Riverway, Suite 500
Houston, T.X. 77056
Phone: (713) 629-4777
Fax: (713) 227-0701
Represents: Phoenix Arms

James V. Marks, Esq.
Charles L. Coleman, III, Esq.
Holland & Knight, LLP
195 Broadway
New York, New York 10007
Phone: (212) 513-3531
Fax: (212) 385-9010
Represents: Heckler and Koch, Inc.

David R. Gross, Esq.
Budd Larner Gross Rosenbaum
Greenberg & Sade, PC
150 John F. Kennedy Parkway, CN 1000
Short Hills, N.J. 07078-0999
Phone: (973) 379-4800
Fax: (973) 379-7734
Represents: Accu-Sport, Ellett Brothers, RSR Management, RSR Group

Timothy A. Bumann, Esq.
Budd Larner Gross Rosenbaum
Greenberg & Sade, PC
The Candler Building
127 Peachtree Street, NE
Atlanta, G.A. 30303
Phone: (404) 688-3000
Fax: (404) 688-0888
Represents: Taurus Holdings, Inc., Taurus International Manufacturing, Inc., Forjas
Taurus, S.A., Heritage Manufacturing, Inc., Braztech, Inc., Rossi, S. A.

James P. Dorr, Esq.
Anne G. Kimball, Esq.
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229
Phone: (312) 201-2000
Fax: (312) 201-2555
Represents: Smith & Wesson Corporation, Sturm & Ruger Co., Inc.

The Law Offices of Steven A. Silver
83 E. Harrison Avenue
Porterville, CA 93257-3700
Phone: (559) 788-2906
Fax: (559) 788-2909
Represents: Excel-Industries a.k.a. Accu-tek

James Branit, Esq.
Bullaro & Carton, Chartered
200 North La Salle Street, Suite 2500
Chicago, IL 60601
Phone: (312) 831-1000
Fax: (312) 831-0647
Represents: Navegar, Inc. d/b/a Intratec

Bradley T. Beckman, Esq.
Beckman & Associates
210 Center Plaza, Ste 910
Philadelphia, PA 19102
Phone: (215) 569-3096
Fax: (215) 569-8769

Timothy G. Atwood, Esq.
273 Canal Street
Shelton, CT 06484
Phone: (203) 924-4464
Fax: (203) 924-1359
Represents: International Armament Corporation d.b.a. Interarms, L.W. Seecamp Co.
Uberti U.S.A., Uberti Aldo.

William G. Griffin, Esq.
Friday, Eldredge & Clark
2000 Regions Center
400 West Capital
Little Rock, Arkansas 72201-3493
Phone: (501) 376-2011
Fax: (501) 376-2147

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Blvd.
Stamford, C.T. 06901-2217
Phone: (203) 961-7411
Fax: (203) 359-3031
Email: www.dcconroy@phjw.com

Michael C. Hewitt, Esq.
Bruinsma & Hewitt
380 Clinton Avenue, Unit C
Costa Mesa, C.A. 92626
Phone: (714) 755-0194
Fax: (714) 755-0195
Email: www.mchewitt007@aol.com
Represents: Bryco Arms & B.L. Jennings, Inc.

Leslie Ruff, Esq.
Biedermann, Hoenig, Massamillo & Ruff, P.C.
90 Park Avenue
New York, N.Y. 10016
Phone: (212) 697-6555 Ext, 22)
Fax: (212) 986-3509 or 697-0902
Represents: Heckler & Koch, GMBH

Jamie Johnston
Haskell, Slaughter, Young & Gallion
305 South Lawrence Street
Montgomery, AL 36104
Phone:  (334) 265-8573
Fax:  (334) 264-7945
Represents Autauga Arms

Falk & Seiler
Donald J. McGrath, Esq.
J. Joseph Wilder, Esq.
Calico Light
2600 Main Place Tower
Buffalo, New York 14202-3785
(716) 852-6670

Post, Polak, Goodsell & MacNeill
Frederick B. Polak, Esq.
Attorneys for Navy Arms
575 Madison Avenue, Ste 1006
(212) 486-1455
mailing address in NY

Eric L. Zalud, Esq.
Benesch, Friedlander, Coplan
& Aronoff, LLP
200 Public Square
Cleveland, Ohio 44114-2378
REP: Amadeo Rossi

John H. McKeon, Jr
Conrad O"Brien Gellman & Rohn P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102-1916
REP: Walther USA

Semmes, Bowen & Semmes
Robert E. Scott, Jr
250 W. Pratt Street
Baltimore, MD 21201
Represents: B.L. Jennings
410-539-5040 phone
410-576-4725 direct
410-5394223 fax

**<u>NAACP v. Acusport</u> <u>*et al.*</u>**
**99 Civ. 7037 (JBW)**
**Service List**

Charles Bachman, Esq.
Preston Richard, Esq.
O'Sullivan, LLP
30 Rockefeller Plaza
New York, NY 10112
Main:  408-2400
Direct:  408-2421
Fax:  408-2420
Represents:  All-Sports, LLC, CSI Sports, LLC, Henry's Tackle, LLC, Go Sportsmen
Supply, Inc.

John Renzulli, Esq.
Renzulli & Rutherford, LLP
300 East 42nd Street, 18th Floor
New York, NY 10017
Phone:  599-5533
Fax:  599-5163
Represents:  Cabela's, Inc.

Richard J. Leamy, Jr., Esq,.
Weidner & McAuliffe, Ltd.
Lead Counsel pro hac vice
One North Franklin, Suite 1900
Chicago, IL 60606-3401
Phone:  (312) 855-1105
Fax:  (312) 855-1792
Email:  rjleamy@wmlaw.com
&
David G. Tobias, Esq.
Saviano & Tobias, P.C.
Local Counsel
9 East 40th Street, 15th Floor
New York, NY 10016
Phone:  532-7650
Fax:  532-7651
Represents:  Faber Brothers, Inc. and Riley's, Inc.

Brian Bender, Esq.
Harris, Beach & Wilcox, LLP
500 Fifth Avenue, 5th Floor
New York, NY 10110
Phone:  687-0100
Fax:  212-687-0659
Represents:  Warehouse 610

Christopher M. Chiafullo, Esq.
David Gross, Esq.
Budd Larner Gross Rosenbaum Greenberg & Sade
150 John F. Kennedy Parkway, CN 1000
Short Hills, NJ 07078-0999
Main:  (973) 379-4800
Fax:  (973) 828-0245
Direct:  (973) 315-4483
Represents:  SG Distributing, Valor Corporation of Florida d/b/a Silver Bullet, SOG
International, Inc., Lew Horton Distributing Company, Inc., Camfour, Ron Shirk's
Shooters, L.M. Burney, Brazas Sporting Arms, Hill Country Wholesale, William
Shooter's Supply, Walter Craig, AcuSport, Ellett Brothers, RSR Group, Inc., RSR
Management Co., Worldwide Sports Network, Davidson's Supply Company, Inc.,
Lipsey's, Inc., Dixie Shooters Supply, Inc., Hick's, Inc., Banger's L.P., Camfour, Inc.,
Glen Zanders Fur & Sporting Goods, Co., Interstate Arms, Corp., North East, Kiesler's
Police Supply, Alamo Leather Goods, Sport's, Inc., Sport's , Inc. and McGee's, Inc.

Jon M. Hopeman, Esq.
Felhaber Larson Fenlon & Vogt
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402-4302
Main:  (612) 339-6321
Direct:  (612) 373-8416
Fax:  (612) 338-0535
Email:  jhopeman@felhaber.com
&
Andrew M. Luger, Esq.
Green Espel
333 South 7th Street, Suite 1700
Minneapolis, MN 55402
Main:  (612) 373-0830
Direct:  (612) 373-8348
Fax:  (612) 373-0929
Represents:  Bill Hick's & Company, Ltd.

Steven Feinberg, Esq.
2511 Forest Parkway
Ellenwood, GA 30294
Phone:  (404) 366-1330
Fax:  (404) 366-5746
Represents:  Euclid Avenue Sales, Co.

Mark Taustine, Esq.
Leahey & Johnson, P.C.
120 Wall Street
New York, NY 10005
Phone:  (212) 269-7308
Fax: (212) 422-4751
Represents:  Bonitz Brothers, Inc., Jerry's Sports, Inc. d/b/a Jerry's Sports Center,
Outdoor Sports Headquarters, Inc., Simmon's Gun Specialties, Inc.

Timothy Atwood, Esq.
273 Canal Street
Shelton, CT 06484
Phone:  (203) 924-4464
Fax:  (203) 924-1359
Represents:  Scott Wholesale Company, Inc.