GREGORY P. JOSEPH LAW OFFICES LLC
Gregory P. Joseph (GJ-4208)
805 Third Avenue, 31st Floor
New York, New York 10022
(212) 407-1200

*Attorneys for Timothy A. Bumann, Esq.*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NAACP,<br><br>Plaintiff,<br><br>vs.<br><br>A.A. ARMS, *et al.*,<br><br>Defendants. | Case No.: No. 99-CIV-3999 (JBW)<br><br>**MEMORANDUM OF TIMOTHY A. BUMANN, ESQ. IN OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY AND DISQUALIFICATION** |

**PRELIMINARY STATEMENT**

Plaintiffs' eve-of-trial motion for discovery from, and disqualification of, Timothy A. Bumann is vitiated by the solitary piece of evidence on which it is predicated. The Declaration of Robert A. Ricker ("Ricker Dec.") contains but one reference to Mr. Bumann. It asserts in ¶16 that, between 1992 and 1997, Mr. Bumann attended "lawyers' meetings" in which he "consistently opposed" the "more proactive approach" advocated by Mr. Ricker. The fatal flaw in plaintiff's motion — putting aside the thoroughly vague and conclusory nature of Mr. Ricker's assertion — is that the Ricker Declaration itself asserts that the meetings were attended by at least seven other lawyers who do not represent any parties in this litigation: Pat Squire, Georgia Nichols, Michael Saporito, Robert Chiarello, Stephen Halbrook, Richard Gardiner, and Don Kates (*id.* at ¶16).

1

Accordingly, plaintiffs cannot satisfy the strict standard in this Circuit for deposing opposing counsel, let alone for disqualification. Mr. Bumann's testimony is not, as it must be, the only alternative available to plaintiffs to discover what transpired at the meetings, nor is his testimony "necessary," rather than merely cumulative. The Ricker Declaration thus affirmatively establishes the lack of merit of the pending motion.

It is no accident that plaintiffs fail to articulate the legal standards for the relief they seek. To obtain the testimony of opposing counsel, plaintiffs must establish, *inter alia*, that "there is no other way to obtain the information." *United States v. All Funds on Deposit in Any Accounts etc.*, 801 F. Supp. 984, 996 (E.D.N.Y. 1992) (Weinstein, J.). With seven alternate witnesses, plaintiffs plainly cannot satisfy this requirement. Similarly, to disqualify under DR 5-102, plaintiffs must show that Mr. Bumann's testimony is "necessary," and not "merely cumulative." N.Y. CODE OF PROF'L RESPONSIBILITY EC 5-10. They cannot do so.

"Disqualification is a drastic measure...." *United States v. Isaacson*, 853 F. Supp. 83, 87 (E.D.N.Y. 1994), *quoting United States v. Locascio*, 6 F.3d 924, 935 (2d Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994). Motions to disqualify "are generally disfavored in this circuit and should be granted only where an attorney's representation of a client would tend to taint the trial." *Ucar Int'l v. Union Carbide Corp.*, 00 Civ. 1338 (GBD), 2002 U.S. Dist. LEXIS 21766 at *5 (S.D.N.Y. Nov. 8, 2002). The Ricker Declaration contains nothing suggestive of taint, nor anything that questions Mr. Bumann's unimpaired ability to represent his clients vigorously. Plaintiffs' vague allusions to the "appearance of impropriety" are a demonstrably insufficient basis for a disqualification motion. *Society for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979) ("The possibility that an attorney's representation in a given case may give rise to an 'appearance of impropriety' is not enough to disqualify.").

Plaintiffs proffer only conclusory assertions that Mr. Bumann was acting as an "agent" for his clients in attending the "lawyers' meetings" and that he took part in a "decision to avoid adopting safe sales practices." (Plaintiffs' Motion at 4, 10-12.) Nothing in the Ricker Declaration supports this, and the accompanying Declarations from Mr. Bumann's clients refute it. Mr. Bumann did not even represent three of his current clients during the 1992-97 time frame set forth in the Ricker Declaration — namely, Amadeo Rossi, S.A., Heritage Manufacturing, Inc., and Braztech International, L.C. ("Braztech"). Further, he was never authorized to, and never did, formulate or advocate policy of any kind on behalf of his five current clients, at any lawyers' meetings or otherwise. *See* the attached Declarations of Luciano Rossi (Exh. A), Robert Morrison (Exhs. B and C), Carlos Murgel (" Exh. D), and Jay Bernkrant (Exh. E) (the "Client Declarations").

As the Client Declarations establish, to disqualify Mr. Bumann at this late date would severely prejudice all five of his clients in this action and "work a substantial hardship on" each of them, within DR 5-102(A)(4).

This is an unprecedented motion. It is common for lawyers who practice in particular areas of law to form views, discuss them with colleagues, and participate in public debate of the issues. They are not paid by clients to engage in this activity and are not representing clients when they do so. This forms no basis either for discovery or for disqualification.

Discovery in this matter ended in August 2002. If plaintiffs wish to call Mr. Ricker as a witness at trial, they may do so. Nothing in his declaration, however, supports the relief plaintiffs seek, and both DR 5-102(A)(4) and the case law of this Circuit preclude it.

3

# ARGUMENT

### I. PLAINTIFFS ARE NOT ENTITLED TO THE DEPOSITION OF MR. BUMANN

In the Second Circuit, "depositions of opposing counsel are disfavored." *United States v. Yonkers Bd. of Ed.*, 946 F.2d 180, 185 (2d Cir. 1991), *citing Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Three strict conditions must be satisfied:

> [T]he taking of opposing counsel's deposition is permissible only where (1) there is no other way to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.

*United States v. All Funds on Deposit in Any Accounts etc.*, 801 F. Supp. at 996 (emphasis added), *citing Shelton*, 805 F.2d at 1327. *Accord Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Group, Inc. (In re Freidman)*, 286 B.R. 505, 508 (S.D.N.Y. 2002); *Pereira v. United Jersey Bank*, 1997 U.S. Dist. LEXIS 19751, No. 94 Civ. 1565, 94 Civ. 1844, 1997 WL 773716, at *7 (S.D.N.Y. Dec. 11, 1997).

Plaintiffs satisfy none of these requirements. As the Ricker Declaration makes clear, at least seven other witnesses observed the events about which plaintiffs wish to depose Mr. Bumann. Thus, plaintiffs cannot — and do not — assert that "there is no other way to obtain the information." They therefore fail to make the first requisite showing.

Plaintiffs also fail to satisfy either the second or third prong of the *Shelton* test. Mr. Bumann's testimony is not relevant, let alone crucial, because he was not appearing as an agent for any of his current clients — he was not authorized by them to act as an architect or advocate of policy at any meetings, and did not so act on their behalf. Indeed, at the time the meetings took place, he did not even have a relationship with three of his current clients —one of them, Braztech, did not even exist. All of the *Shelton* factors thus mandate denial of plaintiffs' motion for discovery. The availability of seven alternate witnesses in itself is dispositive.

## II. THERE ARE NO GROUNDS FOR DISQUALIFICATION OF MR. BUMANN AS TRIAL COUNSEL

Disqualification of trial counsel is a drastic, highly prejudicial measure that is strongly disfavored in the Second Circuit:

> [W]e have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct.... This reluctance probably derives from the fact that <u>disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons</u>. And even when made in the best of faith, such motions inevitably cause delay.... [C]ourts should be quite hesitant to disqualify an attorney.

*Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (emphasis added). *Accord Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 53 F. Supp. 2d 338, 346 (E.D.N.Y. 1999) ("The Second Circuit concurs in the general aversion to disqualifications."); *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 666 (S.D.N.Y. 1995) ("Motions to disqualify opposing counsel are viewed with disfavor in this Circuit."). *See also S & S Hotel Ventures Ltd. Partnership v. 777 S. H. Corp.*, 69 N.Y.2d 437, 443 (1987) ("Disqualification of a law firm during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party's right to representation by the attorney of its choice... [D]isqualification ... can stall and derail the proceedings, redounding to the strategic advantage of one party over another.").

Courts in this Circuit emphasize the serious risk of abuse when disqualification motions are filed for tactical reasons — amply illustrated in the present case, where plaintiffs have moved on the eve of trial to disqualify counsel who has devoted enormous time to trial preparation and developing a relationship of trust and confidence with his clients. *See, e.g., Exco Resources, Inc. v. Milbank, Tweed, Hadley, & McCloy LLP*, 02 Civ 5638 (BSJ), 2003 U.S. Dist. LEXIS 1442 at *12 (S.D.N.Y. Feb. 3, 2003) ("A party's choice of counsel is entitled to great deference....

Disqualification motions are viewed with disfavor because they interfere with a party's right to employ the counsel of its choice."); *Bennett Silvershein Assoc. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) ("The Second Circuit has 'indeed been loathe to separate a client from his chosen attorney.... The delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance"); *Herr v. Union Local 306, Motion Picture Projectionists*, 943 F. Supp. 292, 294 (S.D.N.Y. 1996) ("Motions to disqualify counsel are viewed with disfavor in this Circuit ... Such motions often are made to delay proceedings or to harass the opposing party.").[1]

Consequently, plaintiffs are subject to a demanding burden of proving the facts required for disqualification:

> "<u>A high standard of proof</u> on the part of one who seeks to disqualify" counsel is required.... [A] moving party "bears a heavy burden of proving facts required for disqualification." <u>Unless an attorney's conduct tends to taint the judicial process, the court will not disqualify counsel</u>.

*In re Joint Eastern & Southern District Asbestos Litig.*, 133 F.R.D. 425, 429 (E.D.N.Y. and S.D.N.Y. 1990) (emphasis added). *Accord Statavest*, 903 F. Supp. at 666 ("Courts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted."); *Silvershein*, 776 F. Supp. at 802 ("the party seeking disqualification must carry a 'heavy burden,' ... and must meet a 'high standard of proof' before a lawyer is disqualified."); *Ucar*, 2002 U.S. Dist. LEXIS 21766 at *5; *Hyatte v. Winnebago*

---

[1] Also implicated are policies favoring fair and efficient administration of the courts. *See, e.g., Bottaro v. Hatton Associates*, 680 F.2d 895, 896 (2d Cir. 1982) ("This Court has adopted 'a restrained approach,' ... which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case.... [T]his laudable goal cannot be attained through rulings in the course of litigation without inviting the wholesale filing of motions for tactical reasons. The result would be needless disruption and delay of litigation, thereby impairing the efficient administration of justice.").

*County Recorder*, 99 c 50286, 2003 U.S. Dist. LEXIS 1992 at *3 (N.D. Ill. Feb. 12, 2003) ("Attorney disqualification is a drastic measure which should be imposed only when absolutely necessary and the party seeking disqualification has the burden of demonstrating its necessity.").

Plaintiffs have not carried their heavy burden.

### A.     **Plaintiffs Cannot Demonstrate the Necessity of Mr. Bumann's Testimony**

Plaintiffs seek to disqualify Mr. Bumann from acting as trial counsel on the ground that he was "an actor" in the events underlying the litigation and should be a witness in this case, but nowhere do they even attempt to make the requisite showing that Mr. Bumann's testimony will be "necessary":

> [W]hether a witness "ought" to testify is not alone determined by the fact that he has relevant knowledge or was involved in the transaction at issue. Disqualification may be required only when it is likely that the testimony to be given by the witness is necessary. <u>Testimony may be relevant and even highly useful but still not strictly necessary.</u>

*S & S Hotel Ventures Ltd. Partnership*, 69 N.Y.2d at 445-46 (emphasis added). *Accord Paretti v. Cavalier Label Co.*, 722 F. Supp. 985, 986 (S.D.N.Y. 1985) ("Because attorney disqualification is a severe sanction, Saperstein should not be disqualified unless it is "likely that [his] testimony ... is necessary."); *Herr*, 943 F. Supp. at 294 ("disqualification may be required only when it is likely that the testimony to be given by the witness is necessary."); *Plotkin v. Interco Dev. Corp.*, 137 A.D.2d 671, 673 (2d Dep't 1988) (same).

Testimony is not "necessary" where, as here, its substance is available from other witnesses. "A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and <u>availability of other evidence</u>." *S & S Hotel,* 69 N.Y.2d at 446. (emphasis added). *Accord Paretti,* 722 F. Supp. at 986 ("a lawyer who could provide only cumulative testimony may act as trial counsel."); *Herr,* 943 F. Supp. at 294 ("A lawyer need not

7

withdraw as counsel if it is 'unlikely that he will be called as a witness because his testimony would be merely cumulative....' *Ethical Consideration* 5-10, N.Y. Jud. Law App. (McKinney 1992)"); *Plotkin,* 137 A.D.2d at 673.

Thus, disqualification is routinely denied where, as here, there are potential witnesses to who are not advocates. *See, e.g.,*:

- *Paretti,* 722 F. Supp. at 987: "[T]o the extent that a party made an admission at the July and October meetings, there are five different persons who can testify about what the party said or did. Therefore, [attorney] Saperstein's testimony would be cumulative."

- *Herr,* 943 F. Supp. at 295: "Given the large number of witnesses to the events at the three union meetings, any testimony [attorney] Brodsky could offer would be merely cumulative. Therefore, Ethical Consideration 5-10 applies, and Brodsky cannot be disqualified on this basis.... Further, there is no showing that Brodsky's testimony is necessary to Herr's case. Though the matters about which he could testify are significant, there is no showing that Brodsky's potential testimony should be afforded any more weight than that of the other union members present at the meetings."

- *S & S Hotel,* 69 N.Y.2d at 446: "[P]laintiff did not dispute that [its attorney,] Sassower participated in negotiations and communications with defendant. However, it was error to give no recognition to plaintiff's contention that Sassower's testimony was not material or even necessary, because ... [Sassower's] testimony would at most be cumulative or relate only to matters of formality."

8

- *Plotkin*, 137 A.D.2d 673-74: "[R]espondents failed to discharge their burden of establishing that [plaintiffs' attorney] Schulman's participation would result in unfairness or taint the proceedings.... [Respondents] have failed to rebut the plaintiffs' contentions that ... the plaintiffs themselves were present during various conferences and are available to testify to the key events surrounding the parties' dispute concerning the house construction plans."

The cumulative nature of any testimony by Mr. Bumann, given the conceded presence of numerous alternative witnesses to any "lawyers' meetings" he attended, is alone dispositive of plaintiffs' contention that Mr. Bumann should be disqualified as trial counsel. If the testimony is cumulative, it is not "necessary," and thus provides no basis for the drastic measure of disqualification.[2]

---

[2] It is also significant that Mr. Bumann's clients have disavowed any intention to call him as a witness, notwithstanding plaintiffs' frivolous threat that any failure to do so will constitute a concession of the truth and import of the Ricker Declaration. See Plaintiffs'. Motion at 2. As the New York Court of Appeals observed in *S & S Hotel*, disqualification motions are particularly suspect where the client has made an informed choice not to call the lawyer as witness:

> [T]he actual connection between Sassower, the law firm and the trial cannot be ignored in evaluating whether the firm should be disqualified. Indeed, plaintiff repeatedly declares throughout its submissions that it does not intend to call Sassower as a witness at all. These declarations of intent by a sophisticated business plaintiff, as well as by its counsel, made after pleadings and limited discovery — with its trial strategy in mind — must be seriously regarded in determining what interest is being served by nonetheless disqualifying the law firm. True, such statements are not determinative of whether a witness "ought to be called", but neither can an informed commercial plaintiff's choice be ignored. Where such a client, in such circumstances, knowingly chooses to forego the testimony of its lawyer because it prefers to continue the representation of its law firm, it is curious indeed for the adversary to insist that the lawyer ought to be called as a witness for that client, and for a court on that basis to disqualify the firm.

*S & S Hotel*, 69 N.Y.2d at 445.

## B. Plaintiffs Have Demonstrated No Impropriety That Justifies Disqualification

Rather than provide any specificity as to the nature of Mr. Bumann's potential role as a witness, plaintiffs insinuate that Mr. Bumann's presence at "lawyer's meetings" somehow crossed an ethical line. *See, e.g.*, Plaintiffs' Motion at 2 ("trial counsel have crossed over from being advocates in litigation to being actors in the underlying action"); *id.* at 5 (counsel "acted as participants in the transaction of the business of defendants itself, comparable to participants in a securities issue."); *id.* at 12 ("Mr. Bumann was an actor in that he opposed the industry's taking voluntary steps toward safer distribution, not just as an attorney advising his clients in litigation, but at industry planning meetings with various parties present at which issues of joint action were discussed.").

As discussed above, the Ricker Declaration does not support these assertions of agency and authority, and the Client Declarations directly contradict them. Even leaving that aside, however, plaintiffs nowhere articulate precisely how these characterizations of Mr. Bumann, if true, would require his disqualification. Plaintiffs point to nothing that would undermine Mr. Bumann's vigorous representation of his clients, nor to any privileged position with respect to plaintiffs that would give Mr. Bumann's clients an unfair advantage in litigation. Plaintiffs' dramatic speculations concerning Mr. Bumann's supposed role in his client's businesses — during a period of time when three of five were not even his clients — is irrelevant to this motion:

> [W]ith rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, ... or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, ... thus giving his present client an unfair advantage....

10

> Weighing the needs of efficient judicial administration against the potential advantage of immediate preventive measures, we believe that <u>unless an attorney's conduct tends to "taint the underlying trial," ... by disturbing the balance of the presentations in one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney</u>....
>
> We believe that when there is no claim that the trial will be tainted, <u>appearance of impropriety is simply too slender a reed on which to rest a disqualification order</u> except in the rarest cases.

*Nyquist*, 590 F.2d at 1246-47 (emphasis added). *Accord Society for Good Will to Retarded Children, Inc.*, 466 F. Supp. at 724.

Plaintiffs have pointed to no such facts, specific or general. Consequently, their vague allusions to the "appearance of impropriety" add nothing to their motion.

## **CONCLUSION**

> "[O]ne of the factors a court must consider in deciding a motion to disqualify is the timing of the filing of the motion.... '[A]n order to disqualify counsel on the eve of trial would do more to erode the confidence of the public in the legal profession and the judicial process than would an order allowing the firm to continue its representation of the plaintiff.'"

*Beilowitz v. GMC*, 226 F. Supp. 2d 565, 573 (D.N.J. 2002)), *citing Dewey v. R. J. Reynolds Tobacco Co.*, 109 N.J. 201, 219, 536 A.2d 243, 252 (1988).

Plaintiffs have satisfied none of the requirements for either the discovery or the

disqualification they seek. For all of the foregoing reasons, plaintiffs' Motion for Discovery and Exclusion of Counsel should be denied in all respects.

Respectfully submitted.

**GREGORY P. JOSEPH LAW OFFICES LLC**

By: _____
Gregory P. Joseph (GJ-4208)

805 Third Avenue, 31st Floor
New York, New York 10022
(212) 407-1200
Fax: (212) 407-1280

*Attorneys for Timothy A. Bumann, Esq.*