1

1          UNITED STATES DISTRICT COURT
2          EASTERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - X

4   NAACP, et al.,                    :     CV-99-3999(JBW)

5                      Plaintiffs,:

6       - against -                   :     United States Courthouse
                                             Brooklyn, New York
7   ACUSPORT CORP., et al.,           :
                                             January 2, 2003
8                      Defendant. :         10:00 a.m.
    - - - - - - - - - - - - - - - X

9
         TRANSCRIPT OF CIVIL CAUSE FOR MOTION
10       BEFORE THE HONORABLE JACK B. WEINSTEIN
         UNITED STATES DISTRICT JUDGE
11


12

APPEARANCES:
13
For the Plaintiff:      LAW OFFICES OF ELISA BARNES, LLC
14                      111 Broadway
                        New York, New York   10006
15                      BY:  ELISA BARNES, ESQ.

16
For the Defendants:
17                      RENZULLI, PISCIOTTI & RENZULLI, LLP
                        300 East 42nd Street
18                      New York, New York   00017-5947
                        BY:  LEONARD S. ROSENBAUM, ESQ.
19                      (For Glock, Inc., et al.)

20
                        GORDON-FEINBLATT
21                      ROTHMAN, HOFFBERGER & HOLLANDER, LLC
                        233 East Redwood Street
22                      Baltimore, Maryland   21202
                        BY:  LAWRENCE P. FLETCHER-HILL, ESQ.
23
                        SEMMES, BOWEN & SEMMES
24                      250 West Pratt Street
                        Baltimore, Maryland   21201
25                      BY:  BRITTANY L. ROBERTS, ESQ.
                        (For Bryco Arms, B.L.Jennings)

2

1   APPEARANCES (Continued)

2   For the Defendants:      JONES, DAY, REAVIS & POGUE, ESQS.
                             2727 North Harwood Street
3                            Dallas, Texas  75201-1515
                             BY:  MARK R. HALL, ESQ.
4                            (For Colt Manufacturing Co., Inc.)

5                            SAVIANO & TOBIAS, P.C.
                             9 East 40th Street
6                            New York, New York  10016
                             BY:  DAVID G. TOBIAS, ESQ.
7                            (For Distributor Defendants Faber
                              Brothers, Inc. And Riley's Inc.)

8

9                            BECKMAN AND ASSOCIATES
                             Two Penn Center Plaza
10                           Philadelphia, Pennsylvania 19102
                             BY:  CRAIG D. HARVATH, ESQ.
11                           (For North American Arms, Inc.)

12                           GREENBERG TRAURIG, LLP
                             885 Third Avenue
13                           New York, New York  10022-4834
                             BY:  JOEL M. COHEN, ESQ.

14

15   ALSO PRESENT BY TELECONFERENCE:

16

17   JAMES DORR
     ANN KIMBALL

18

19

20   Official Court Reporter:     Diana Pereira, RPR-CSR-CRR
21   E-mail: ForDiana@aol

22
            Proceedings recorded by computerized stenography.
23          Transcript produced by Computer Aided Transcription.

24

25

3

1        THE CLERK:  Civil cause for motion, NAACP v.

2   Acusport Corp., et al.

3        Judge, give me a moment.  I have to get an attorney

4   on the phone and give them a chance to set up.

5        THE COURT:  Good morning.  I will hear the

6   application.

7        MS. BARNES:  Good morning.  Your Honor, this is a

8   plaintiffs' action pursuant to Rule 72 for your Honor to

9   vacate the order of Magistrate Judge Pollak and provide the

10  relief requested by plaintiff.  I have with me today, should

11  anything come up, Ms. Drew Claxton, who is senior researcher

12  at the National Economic Research Association.

13       THE COURT:  All right.

14       Swear the witness, please.

15       THE CLERK: Stand and raise your right hand.

16  **DREW CLAXTON**

17       called by the Plaintiff, having been first duly

18       sworn, was examined and testified as follows:

19       THE CLERK:  Please state your name.

20       MS. CLAXTON:  Drew Claxton.

21       MS. BARNES:  Your Honor, the application deals with

22  the expert witness reports for primarily one and part of

23  another of plaintiffs' experts.  It is based in large part on

24  the fact that due to matters beyond our control and having

25  expended tremendous amount of effort, the ATF data that your

4

1    Honor provided to be disclosed to us on September 18th of

2    2002 was not in its totality and in a usable form provided.

3    It was not provided until Saturday, December 7th, near the

4    open of our office on that day to receive the data.

5    Ms. Claxton began working the next day, December 8th, on

6    Sunday, and we have moved on from there.

7           The problem is that the data that had been ruled by

8    your Honor to be provided by the end of September allowing

9    plaintiffs then approximately two-and-a-half months to

10   analyze was not received until December 8th.

11          To put this application in some context, your

12   Honor, I would like to back up for a second.

13          Plaintiffs submitted on December 20th twelve expert

14   reports.  One of them totaled, I believe, 1400 pages.  There

15   are extensive analyses provided and that had been provided to

16   defendants.  Plaintiffs indicated to the Court, to defense

17   counsel, that we stood ready starting at the beginning of

18   this past week, December 30th, to go forward with expert

19   witness reports for all twelve.  It is not that plaintiffs

20   have been sitting around doing nothing waiting for this data.

21   We have complied in the majority of the instances with the

22   magistrate judge's orders.  We have provided defendants with

23   extensive material for which they can begin and pretty much

24   complete their analyses of plaintiffs' experts.

25          The other context that I would ask the Court to

evaluate before I get into the kind of particulars of the ATF

data is that since May 4th, when your Honor set this case

down for trial, plaintiffs have done extensive amount of

work.  We have received thousands and thousands of pages of

documents, forwarded them on to experts.  We have taken over

60 depositions throughout the entire summer.  All this has

been by and large in accordance with the schedule set up by

the magistrate judge.  There have been some little overlaps

here and there.  We have endeavored, I think through almost

insurmountable odds, thanks to the good work of many people,

to accommodate both the defendants and to adhere to the trial

schedule set by this Court.

The ATF issue, however, was something that was

completely beyond plaintiffs' control.  As this Court may

recall, the Court ordered the data submitted to all the

parties' experts.  It was our understanding that part of the

purpose of having Mr. Dokery (ph) assigned to assist the ATF

and the parties to work out this issue and to go through

extensive meetings at ATF this summer was to bring all the

experts up to speed on what this data was, what format it

would come in, how it would be used.  To obviate the long

learning curve, or to shorten the learning curve, plaintiffs'

experts took that extremely seriously.

We received the data initially from ATF on the 27th

of September.  Ms. Claxton set about to immediately deal with

6

1   it.  Within a day and a half, we realized that the ATF had

2   not submitted the data to us in a way that was usable or

3   readable or had been agreed on. We heard nothing from the

4   defense experts on this issue.

5          Ms. Claxton continued to work on it.  I contacted

6   both the deputy general counsel at ATF.  I contacted this

7   Court.  I contacted the magistrate judge.  We continued on.

8   We reached an agreement without resort to coming back into

9   Court because the ATF understood that they had not provided

10  it in exactly the form requested and agreed on.

11         In the middle of October, they gave us some of the

12  trace database in a form.  Ms. Claxton then turned to the

13  firearms licensing database, which your Honor may recall was

14  the second part of your Honor's order; that dealt with the

15  names, the sequencing codes, the identifying codes of the

16  firearms licensees, which is an integral part of how this

17  database is both used at ATF and is used by the experts in

18  this case.

19         Ms. Claxton began to try to deal with this database

20  that had been provided in a form entitled comma delimited,

21  which had never been discussed among the experts.  In fact,

22  it is my understanding that Howard Andrews had specifically

23  requested from the ATF that it not be produced in this form

24  because it is apparently an almost impossible form to use by

25  data analysts.

1    Ms. Claxton, and she will be happy to discuss this

2  with the Court, but Ms. Claxton had to write programs to

3  attempt to use it.  She worked on it for over two weeks,

4  consulted with Dr. Andrews, consulted with ATF extensively,

5  and found at the end of that time that it was simply in a

6  format that was not usable, and together, we got the ATF to

7  put it into another format, the fixed field format.  That did

8  not occur until November 27 -- I'm sorry.  Monday, November

9  25th, was the first time that we, plaintiffs' experts,

10  received the fixed field format licensing system file.

11    Throughout this time, there had been no word from

12  defendants' experts.  The data that had been produced by ATF

13  to each of these points is not readable by any programmer or

14  magician even, and it is not simply that their experts can do

15  something that our experts cannot do.  I think one must

16  conclude it is a situation where defendants' experts, despite

17  having been brought into this process early, have relied and

18  waited on Plaintiffs' experts to do the enormity of the work

19  in putting this data together.

20    ATF has been as cooperative as they can possibly

21  be.  They have been working with us going back and forth and,

22  thus, what happened between Monday, November 25th and

23  December 7th, was a submission of at least three other file

24  formats in which ATF is trying to work out the production of

25  this data.  Ms. Claxton and the rest of the staff,

8

1    Dr. Andrews, are also trying to work to get the data into

2    some kind of form.

3              After a number of phone calls by counsel, and

4    Ms. Claxton having spent well over 100 hours in getting this

5    data into any kind of form that can be just read so that the

6    analysis can start, did not occur until sometime at the

7    beginning of December.

8              That said, when my experts called and said this

9    December 20th deadline will not be possible to be met, it was

10   me looking at a calendar, working backwards from the trial

11   date from the submission of defense counsel experts,

12   et cetera, that I came up with January 15 as the last

13   possible date that I could see that would be reasonable for

14   the magistrate judge and the Court to give to us provide the

15   information to defense counsel.  That gives them over five

16   weeks to simply replicate what we had had less than five

17   weeks to put together as a report.

18             Their reports could still be done on the 19th.  We

19   could still continue to do the depositions.  We are ready and

20   able to do them quickly.  It allows for a short window at the

21   end of the case, the end of discovery, for defense counsel to

22   move as they might.  It still allows us to have the trial

23   date.  I did not hear from the magistrate judge until

24   December 20th, which was when the reports were due.  The

25   magistrate judge decided to make the reports of NERA and

1    Dr. Andrews due on January 6th, and to give the defendants

2    another two weeks beyond the 19th, to the 28th of February,

3    for the submission of their responding reports, thus giving

4    plaintiffs only three weeks at the end of the period in which

5    to receive the reports, take depositions and prepare for

6    trial on those issues.

7         I think given the totality of the facts of what

8    plaintiffs have done and have worked on to get this case

9    ready and to prepare the ATF data essentially for defendants

10   counsel so that they can take our programs on, hopefully,

11   with your Honor's permission, on January 15th, plug them into

12   their computers and in an afternoon have access to data that

13   we have literally been working on for hours and hours and

14   hours over two-and-a-half months, because we have gotten the

15   date into readable programs, formats, and defense will simply

16   be able to plug it in as one would plug in an Access file or

17   an Excel file.  They will not have to write programs.  All

18   that work has been done for them.

19        Accordingly, given the totality of all the facts in

20   this case and our efforts to keep the case on trial schedule,

21   I would respectfully ask the Court to allow plaintiffs to

22   serve the reports of NERA and the part of the report of

23   Dr. Howard Andrews on the 15th, which NERA would have a lot

24   longer, but by my account, is the last possible date to make

25   all these timetables work in this matter.

10

1       I ask the Court to do that and understand that the

2  burden on me is great.  Given the total of these

3  circumstances, I would hope that the Court could see that in

4  fact a mistake had been made by the magistrate judge and

5  clear error in this matter on both the facts and the law

6  committed.

7       THE COURT:   Thank you.

8       Well, Ms. Claxton, this all seems very abstract to

9  me.  This is one and a half reports?  What is this that you

10  need time for.

11       MS. CLAXTON:   One and a half reports.  It would be

12  our report, NERA's report.  Our entire research and analyses

13  is using the ATF database.  We had expected that we receive

14  everything that we needed by September 27th or end of

15  September.

16       THE COURT:   I understand that.  What are you

17  trying to show with this particular data?

18       MS. BARNES:   Well --

19       THE COURT:   Excuse me, I am addressing the expert.

20       MS. CLAXTON:   I am the data person.  I am not the

21  expert witness on this project.

22       THE COURT:   What do you know about what we're

23  talking about?

24       MS. CLAXTON:   I know about the data and how long it

25  has taken.  I am the one who is working with the data.

11

1          THE COURT:   What is it intended to show?

2          MS. CLAXTON:   We would have at least, had we had

3    all the data by September, end of September, we would have at

4    least been able to replicate analyses done previously, any

5    analyses based on geographic --

6          THE COURT:   How does that help me?  What are you

7    trying to show with the data?

8          MS. BARNES:   Your Honor, Ms. Claxton is really not

9    the person.  I have asked her to come today in order to

10   provide the Court support for the enormous difficulty.  What

11   plaintiffs are trying to show --

12         THE COURT:   Excuse me.  Then she is not helpful to

13   me.

14         MS. BARNES:   She is helpful in the sense, your

15   Honor, that she is the only one who can speak to --

16         THE COURT:   Excuse me.  What is this data trying

17   to prove?  What do you expect the experts to say?  What is

18   the conclusion of all of this analysis going to be?

19         MS. BARNES:   That some defendants were

20   disproportionately involved in traces;  they had sold

21   repeatedly into outlets, retail outlets, that are involved

22   with traces;  what types of sales are involved in most of the

23   traces;  the geographic issues involving the traces.

24         THE COURT:   All of this is coming from this

25   particular data?

12

1        MS. BARNES:   Absolutely.

2        THE COURT:   Now, have you put this data into

3   usable form now?

4        MS. CLAXTON:   Yes, it is.   As of December 15th.

5        THE COURT:   Has that data in usable form been

6   supplied to the defendants?

7        MS. BARNES:   No, it hasn't.

8        MR. TENNEY:   No.

9        THE COURT:   Why can't you do that immediately?

10       MS. BARNES:   To supply them the programs as we have

11  set them up?

12       THE COURT:   Yes.

13       MS. BARNES:   And the formats?

14       THE COURT:   Yes.   Correct.

15       Why can't you do that immediately?

16       I am asking the data expert?

17       MS. CLAXTON:   The data and programs are available.

18       THE COURT:   So that another expert can use them to

19  manipulate the figures?

20       MS. CLAXTON:   Yes.

21       THE COURT:   I don't use "manipulate" in a

22  derogatory sense, but can work with the figures?

23       MS. CLAXTON:   Sure.

24       THE COURT:   That will be a help to them?

25       MS. CLAXTON:   Sure.

13

1          THE COURT:   Can you give them that right away in

2    usable form on computer disks or however these experts use

3    it?

4          MS. CLAXTON:   Right.

5          THE COURT:   Okay.

6          Who is the expert going to be who is going to

7    testify about this?

8          MS. BARNES:   Lucy Allen, your Honor, who testified

9    in Hamilton.

10          THE COURT:   Has she provided all Rule 26 data on

11    her background?

12          MS. BARNES:   No.  I will be happy to do that.

13          THE COURT:   All right.

14          By January 6th, a partial report will be completed

15    which will include all -- I am saying this provisionally, so

16    defendants can be heard of course.  All data in usable form

17    will be supplied.  Plaintiffs experts will communicate orally

18    if necessary or in writing with one or two experts from the

19    defendants.  I don't want the plaintiffs expert deluged with

20    a lot of expert calls.

21          The defendants will get together and get an expert

22    who is reasonable and professional and get in touch with the

23    plaintiffs' data people and experts and try to exchange this

24    data in usable form so that everybody can proceed as rational

25    scientists.  Right?

14

1          That's what I propose to do subject to hearing from

2     everybody.  That you can accomplish, correct?

3               MS. CLAXTON:  Yes.

4               THE COURT:  Okay.

5          The rest of the Rule 26 material with respect to

6     when the expert is testifying and all the background of the

7     expert, et cetera, that can be supplied by January 6th, which

8     will be supplied.

9               MS. BARNES:  Yes, your Honor.

10              THE COURT:  As I understand it, the only thing you

11    can't give them by January 6th is the analysis of the data.

12    Right?

13              MS. CLAXTON:  Right.

14              THE COURT:  Do you have in beginning your analysis

15    the equations and other material that you will be using in

16    the analysis?

17              MS. CLAXTON:  Well --

18              THE COURT:  Your programs --

19              MS. CLAXTON:  Actually not, having just really

20    gotten the data into readable format two weeks ago.

21              THE COURT:  When will you have your programs?

22              MS. BARNES:  We're really looking, your Honor, at

23    January 15th.

24              THE COURT:  All right.

25          January 15th.  You will also give the defendants

15

1  your programs, whatever they may be, so that they can

2  replicate your results with the data you've already

3  furnished.  Okay.  So they don't have to go grubbing around

4  trying to figure out what you did, right?

5          MS. CLAXTON:  Right.

6          THE COURT:   I want you to be entirely candid with

7  the defendants' experts on what the rationale was, what the

8  programs were, et cetera.  Okay.  Then you will have your

9  final runs and your final conclusions by the 15th.

10          We will have a partial report on the 6th and a

11  final report on the 15th, if that's the program.

12          Anyway, what is the defendants' views?

13          MR. HALL:  Your Honor, Mark Hall speaking for,

14  primarily, the manufacturer defendants, and some of the

15  distributor defendants may have different views; I am not

16  sure.

17          The concern that would remain, I think, with that

18  way of proceeding is that the defendants would still not have

19  enough time, although it would definitely be helpful and our

20  experts could get started.

21          There are two major obstacles here or two major

22  tasks the defendants experts have to undertake.  As the Court

23  has identified, first the plaintiffs have, in effect, set up

24  the raw ATF data to set up a new database.  My understanding

25  is we will get that on January 6th.  Our experts can begin

16

1    looking at that and analyzing it. The second major task that

2    the defendants' experts must undertake is to understand and

3    replicate the analysis that the plaintiffs' experts do based

4    on this new database that they have created.

5    My concern is that with the February 28th due date

6    for just these ATF expert data reports -- all of our other

7    reports, by the way, will be provided on the schedule per the

8    magistrate's order on February 19th, so all we're addressing

9    are the reports dealing with this ATF data, that the experts

10   working on that would not have enough time to replicate the

11   analysis that the plaintiffs have done, understand it,

12   analyze it, decide what responses is appropriate and then do

13   the necessary analysis that they would need to do to put

14   together their programs, write their code, prepare reports

15   and provide those to the plaintiffs.

16   I would propose that in fairness -- I should

17   mention that back in October when the magistrate first set

18   this schedule, there were detailed submissions by both

19   parties. I think the magistrate had a very detailed and

20   clear understanding of this and recognized it and the

21   magistrate set a schedule that gave the defense experts eight

22   weeks to respond. I think the magistrate understood that

23   that was critical. We felt that was the minimum time we

24   would need to be able to respond to the plaintiffs' work and

25   do everything that was necessary.

17

1          In this most recent order, the magistrate cut that

2   back.  We were left with seven weeks. We believe that that is

3   the absolute minimum.  Now, given the Court's proposal, we're

4   going to get a little bit of a head start on that, and that's

5   going to be very helpful.  I would propose a commensurate

6   extension be given just for this ATF data experts of, I think

7   it would take us up to March 7th for the defense experts to

8   provide their reports in response to -- given that we won't

9   get the actual analysis of the plaintiffs' experts until

10  January 15.

11          THE COURT:   What is the trial date?

12          MR. HALL:  March 24.

13          Selection of the jury on the 24th.

14          THE COURT:   All right.  What are the other

15  defendants?

16          MR. TENNEY:  Your Honor, Jim Tenney for the Jerry's

17  defendants.  Two things.  First, we support an extension of

18  time obviously.   Jerry's is in a position that it has not

19  been involved in other firearms litigation.  We have our own

20  expert, Dr. McInerney that has been working feverishly with

21  other people from the ATF in obtaining data.  It may not be

22  the same people that Ms. Barnes was dealing with but there

23  were people from the ATF.  We haven't been sitting still.

24          We have an enormous task in front of us because we

25  don't have a track record.  We don't have, from other

18

1   litigations, the wherewithal. We're proceeding fresh. Our

2   position was initially that if plaintiff was given more time,

3   we need more time. It is extremely important for us to at

4   least first get the March 7th date.

5          The second thing is our expert be able to contact

6   plaintiffs' expert if we are going to first use manufacturers

7   expert, one to one, and they can communicate. It seems a

8   logical solution. If Dr. McInerney still has problems, he

9   should be allowed to talk to the plaintiffs' expert about the

10  data.

11         THE COURT:   What's wrong with that?

12         MR. TENNEY:   You said one expert.

13         THE COURT:   I remember that Jerry's had its own --

14         MR. TENNEY:   Yes.

15         THE COURT:   There will be two experts. I don't

16  see anything wrong with that except it seems to me desirable

17  for the defendants' experts to talk to each other.

18         MR. TENNEY:  Sure.

19         MR. HALL:  Right.

20         THE COURT:   So the experts can get together

21  without harassing each other.

22         MR. TENNEY:  I think that would be easy enough,

23  Judge. We tried and told them not to -- there was a matter I

24  just wanted to bring to the Court's attention that we

25  submitted to Judge Pollak a document we got from the city

19

1    Corporation Counsel that said --

2              THE COURT:    Excuse me.

3              Mark this as a Defendant Jerry's Exhibit, please at

4    this evidentiary hearing.

5              (Whereupon, Defendant (Jerry's) Exhibit 1 was

6    received in evidence, as of this date.)

7              THE COURT:  I don't see what bearing that has on

8    what I am deciding.

9              MR. TENNEY:   Just to the fact that on the third

10   page it says the preparer of certain reports that the

11   plaintiff got was Howard Andrews, who was the plaintiffs'

12   expert in this case.

13             I got back a letter from Ms. Barnes to Judge

14   Pollak.

15             THE COURT:   Mark this as an exhibit as well .

16             (Whereupon, Defendant (Jerry's) Exhibit 2 was

17   received in evidence, as of this date.)

18             MR. TENNEY:  I think that's the right one.

19             THE COURT:    I don't understand what that --

20             MR. TENNEY:  I don't think on this official record,

21   if we got to go through things, that somebody should be

22   saying I can't read.  I don't think between colleagues that

23   should be going on.

24             THE COURT:   I don't understand anyone -- the third

25   full paragraph you mean.   Objections be ignored?

1    MR. TENNEY:  The one before that, in the middle

2  where "Mr. Tenney can't read."

3    THE COURT:  Well, I take it in a technical sense,

4  can't read the data and figures the way we read.  I don't

5  take that as an insult.

6    I don't want any insulting words exchanged among

7  counsel or experts.

8    MR. TENNEY:  I appreciate your comment, Judge.

9    Other than that, those are the two issues we were

10  grappling with, the extension of time and the sharing of

11  information.

12    THE COURT:  Okay.

13    Does anybody else wish to be heard.

14    MR. FLETCHER-HILL:  Larry Fletcher-Hill for

15  Beretta.

16    If the time for plaintiffs is extended, we

17  certainly join in and appreciate the commensurate extension

18  for the defendants.  I think it is important to emphasize one

19  thing here which is that the accusations that the defendants

20  have done nothing and are in some sense free-loading on the

21  work of --

22    THE COURT:  I don't credit that.  I assume your

23  experts were working.  Plaintiffs' counsel doesn't know what

24  is happening in your shops.

25    MR. ROSENBAUM:  One more thing I wanted to raise.

1   Leonard Rosenbaum for numerous defendants and counsel for

2   manufacturers.

3          We ask when we do finally get the data and analysis

4   from the plaintiffs, it be in final complete form.  We don't

5   have to go back as we did in the Hamilton case.  We were

6   deposing plaintiffs' experts the day before trial.  We want

7   to make sure there this is complete, we are not being told

8   the analysis is still on going, that certain data still has

9   to be replicated.

10          THE COURT:   I understand the problem.  Your Honor,

11   Jim Dorr in Chicago on behalf of Sturm, Ruger.  I appreciate

12   being able to participate by phone rather than in person.

13          In the follow up with what Lenny Rosenbaum just

14   said, one other thing I would like to make sure the record

15   clearly reflects so we can begin proceeding with plaintiffs,

16   our other expert depositions, that plaintiff is representing

17   to the Court and to defense counsel that her other ten

18   experts whom she has disclosed will not in any way be relying

19   on any of the ATF trace database or the analyses which are

20   done by the two remaining experts for which she is seeking an

21   extension.

22          We can't proceed to depose her other experts if in

23   fact they are going to tell us, oh, we're going to be relying

24   on this other material, but if plaintiff is now representing

25   to the Court and to us that her other experts will not be

1   relying in any way for their opinions or testimony in this

2   case on the trace database or the analyses performed by

3   Mr. Andrews or Ms. Allan, then we can proceed with taking

4   their depositions.

5          THE COURT:   I don't want to get involved in that

6   issue.  Take it up with the magistrate judge should it arise.

7   I am only going to deal with the narrow appeal I now have

8   before me.

9          The defendants may have that additional nine days

10  that I am giving to the plaintiffs.

11         Submit an order.  Try to agree on its terms.

12         MR. ROSENBAUM:  Thank you, your Honor.

13         MS. BARNES:  Your Honor, if I could just on a

14  couple of points that have come up.

15         I would like to know for the record that the

16  defendants will have five weeks longer to replicate, having

17  gotten the data and the full report that plaintiffs have had

18  in dealing with this issue and putting together work product.

19  The other issue is, I would respectfully request that a

20  lawyer from my office be present or be able to be present

21  during any conversations had between the expert defendants

22  and my experts.

23         I say that in hopes this lawyer, me or whoever

24  else, will not say anything or do anything and will certainly

25  not make this issue into more than it needs to be.  But what

1    I have found in this litigation and what, unfortunately, your

2    Honor has just seen is an example of the kind of delays and

3    unnecessary wasting of time.

4         The other problem is defendants' experts, some of

5    whom have been in this litigation before, have been at trial

6    with plaintiffs experts.  I would not want these informal

7    meetings that should be between scientists to turn into a de

8    facto deposition by defendants' experts of plaintiffs'

9    experts.

10        THE COURT:   Excuse me.  Nothing that one expert

11   says to another expert will be used in evidence.  I don't see

12   any point in making a record.  I want no recordings of the

13   conversations among the experts.  That's it.

14        MS. BARNES:  Any attorneys allowed to be present?

15        THE COURT:   I don't see any point of getting the

16   attorneys involved because then the experts tend to allow the

17   attorneys to speak to them.

18        I think the experts I have seen in this litigation

19   or at least prior forms of the litigation are call good

20   scientists and I expect them to work together in an honorable

21   way.  I don't think we need a lawyer.

22        MS. BARNES:  May I have an affirmative -- as

23   Mr. Dorr requested, may I have an affirmative representation

24   that no attorney will be present by e-mail, by phone or

25   whatever, with their experts in terms of discussing.

24

1    THE COURT:   No.  I am not going to be so formal.

2  Just put in an order, what I have decided here.  Try to agree

3  on the terms.  If you can't agree on your terms, furnish

4  alternate forms of the order.

5    Get it out immediately because time is of the

6  essence.

7    The magistrate judge's order is affirmed except as

8  slightly modified.

9    Thank you.

10   THE CLERK:  There are three or four outstanding

11 motions.

12   We have a number of outstanding motions which we

13 wanted to put on for the 10th.

14   THE COURT:  There is a motion that goes on beyond

15 that.

16   THE CLERK:  Right.  You have the 10th, one for the

17 27th, Beretta has just asked for an extension.  Then we have

18 one by Taurus.

19   MS. BARNES:  We do?

20   THE COURT:  What date do you all want.  I don't

21 want to drag you all in constantly.

22   FLETCHER-HILL:  We had one motion for Beretta

23 Holdings, which we had discussion with Ms. Barnes and agreed

24 on the briefing schedule.   It will be fully briefed by the

25 17th.  We would like to have it heard that week.

1          THE COURT:   Put everything on for the 27th so that

2   we don't have to drag you in.

3          MS. BARNES:   I think the parties have what has been

4   styled an abstention motion which they might want to have

5   heard earlier.

6          THE COURT:   Abstention?

7          MR. FLETCHER-HILL:   It is a motion for an interim

8   stay.

9          THE COURT:   I am not going to give you a stay.

10          MR. FLETCHER-HILL:   It is not my motion.

11          THE COURT:   Put everything for the 27th, all

12   motions.

13          THE CLERK:   29th, January 29.

14          THE COURT:   All pretrial motions should be made

15   returnable on that date.

16          Okay.  Thank you very much.

17          MR. TOBIAS:   Your Honor, if may, David Tobias for

18   distributor defendants, Faber and Riley's.

19          You just said all pretrial motions to be

20   returnable.  We have a problem with that.  You denied with

21   leave to renew motions on personal jurisdiction.  I would

22   hope that motion wouldn't be subsumed.  We're only going to

23   get final reports from Ms. Barnes on the 15th.  We would like

24   some time to review those.  They may in fact be relevant to

25   the renewal motions.  I just want the record to be clear that

26

1   if you don't mean all --

2          THE COURT:   I do mean all.

3          MR. TOBIAS:   All right.

4          THE COURT:   I want them all on the 27th so we can

5   clear the decks or the 29th.

6          MR. TENNEY:   May I be heard for Jerry's defendants.

7   It is very important for us to see what analyses the

8   plaintiff comes up with, because as the plaintiff has said

9   today, there has to be a disproportionate number of handguns.

10   If the analyses of their expert shows they are not

11   disproportionate, a summary judgment motion for us and others

12   might be appropriate.   We would only have a thirteen-day span

13   to make that.

14          THE COURT:   The trial is beginning March 24th.

15          Normally, I don't require permission for any

16   further motions but in this case, I will.

17          All motions returnable the 29th.   If you want to

18   make any further motions, get permission from either the

19   magistrate judge or me.   Get it from me.   There may be a

20   Daubert motion.   There may be some other motions.   I want

21   very short preliminary papers before I give you permission to

22   go beyond that date.   It is time to get the case tied up and

23   ready for trial.

24          Anything further?

25          (Silence).

1          THE COURT:    Okay.   Thank you.

2          MR. TENNEY:   Thank you, your Honor.

3          MS. BARNES:   Thank you, your Honor.

4          MR. HALL:   Thank you, your Honor.

5          MR. TOBIAS:  Thank you, your Honor.